In the Matter of the General Assignment for the Benefit of Creditors of MINCOW BAG CO., INC., Assignor. GABRIEL S. KAYE, Appellant; FINALE, INC., Respondent.

First Department, March 21, 1968.

*Arnold J. Ross* of counsel (*Michael R. Kleinerman* and *Robert I. Postel* with him on the brief; *Booth, Lipton & Lipton,* attorneys), for appellant.

*Albert N. Proujansky* of counsel (*Kane, Kessler & Proujansky,* attorneys), for respondent.

*Per Curiam.* This appeal involves the application of subdivision (37) of section 1–201 and sections 2–326 and 9–102 of the Uniform Commercial Code, effective in New York State as of September 27, 1964.

The appellant herein is assignee of creditors of Mincow Bag Co., Inc., consignee of ladies gloves, handbags and other female accessories, sold on a commission basis in many stores throughout the country. In October of 1964, Mincow entered into an agreement with respondent, Finale Inc., a manufacturer of ladies gloves, whereby Finale would deliver shipments of gloves on consignment, to the stores directly. The gloves were on visible display for sale, and were sold by employees of the various stores. Title remained in Finale and Mincow would receive commissions for having arranged the sales by the store outlets. In the practical workings of the arrangements, Mincow never had physical possession of the goods.

The appellant moved to compel Finale to turn over to him as assignee any merchandise remaining in its possession, which it had previously consigned to Mincow, and any proceeds received by Finale from the sale of merchandise consigned by Finale to Mincow. In the furtherance of this request appellant invokes the aid of the newly effective Uniform Commercial Code.

We hold the sections of the Uniform Commercial Code referred to above and relied upon by the assignee appellant do not fortify his position. The goods were not delivered to a consignee's place of business " at which he deals in goods of the kind involved "; there was no firm obligation on the part of Mincow to pay; Mincow never had physical possession of the goods, and until a sale was effected had no interest against which the consignor had to secure itself. The unwary could not have been led into becoming creditors of Mincow based on any ostensible ownership of the merchandise. Furthermore, the

reliance of appellant on *General Elec. Co.* v. *Pettingell Supply Co.* (347 Mass. 631) is misplaced; Pettingell not only had physical possession of the merchandise, it had the power to sell and did sell.

Accordingly, the order of Special Term dated May 14, 1967 denying appellant's motion should be affirmed, with costs and disbursements, and similarly should be affirmed is that portion of the order granting respondent's cross motion to compel remittance to it of any proceeds derived by Mincow and of any goods remaining in appellant's possession as assignee which had been the subject of a consignment to it from Finale.

STEUER, J. (dissenting). This appeal involves the proper application of two sections of the Uniform Commercial Code (§§ 2–326 and 9–102) which, in the particular context, have not been interpreted before; and as the statute is reformatory rather than interpretive of common law, the case is truly one of first impression.

Mincow Bag Co., Inc., whose creditors, through their assignee, make this application, was in the retail glove and accessory business. It dealt with a number of suppliers, all of whom manufactured goods for Mincow's order and on which Mincow's name was placed. These goods were delivered to department stores throughout the country with which stores Mincow had an arrangement called a concession. By these arrangements the stores sold the goods through their own employees. The various suppliers made different arrangements with Mincow as to title to merchandise. Only that of respondent Finale, Inc. is in question here, but it is significant to decision that in regard to other suppliers Mincow did acquire title.

As regards the goods purchased from Finale, title remained in the seller and Mincow was merely an agent to sell. Finale had the risk of physical loss and also of possible loss from the failure of a retail buyer to pay or the store to remit the funds. The goods, however, were marked with the Mincow name, and there was nothing in their physical appearance to distinguish them from goods of any other supplier.

The portion of section 2–326 of the Uniform Commercial Code which would be applicable is subdivision (3), which reads:

" Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title

to the person making delivery until payment or resale or uses such words as ' on consignment ' or ' on memorandum '. However, this subsection is not applicable if the person making delivery

" (a) complies with an applicable · law providing for a consignor's interest or the like to be evidenced by a sign, or

" (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

" (c) complies with the filing provisions of the Article on Secured Transactions (Article 9)."

It must be obvious that the purpose of the statute is to protect creditors of a consignee of goods from hidden liens (American Law Inst., Uniform Commercial Code 1962, Official Text with Comments, p. 117; *General Elec. Co.* v. *Pettingell Supply Co.,* 347 Mass. 631). Ingenuity can devise any number of variations of the consignment or sale or return agreement which take the transaction out of the letter of the law, but not out of its spirit (see " Commercial Transactions: UCC Section 2–326 and Creditor's Rights to Consigned Goods ", 65 Col. L. Rev. 547). It is the latter that should control interpretation.

It is argued that the transactions involved here are not covered by the words of the statute because Mincow did not maintain a place of business at which it dealt, and that it is outside the spirit because there was no holding out that the goods were Mincow's goods. And it is pointed out that the places of delivery were the respective department stores and the ostensible ownership was in the department store to which they were consigned. While this may be quite sound as regards the public generally, it would not follow with regard to persons who had mercantile dealings with Mincow and extended credit. Those people would understand that the stores were places at which Mincow dealt and would certainly be entitled to assume that the situation was the same as it was with regard to other suppliers.

The order should be reversed and the assignee's motion should be granted.

BOTEIN, P. J., CAPOZZOLI, McGIVERN and McNALLY, JJ., concur in *Per Curiam* opinion; STEUER, J., dissents in opinion.

Order entered on May 14, 1967, affirmed with $30 costs and disbursements to the respondent.