In re John J. GILECE, Jr., Debtor.

**FARMERS AND MECHANICS NATIONAL BANK, Plaintiff,**

v.

**John J. GILECE, Jr., Defendant.**

**Bankruptcy No. 79–02202T.
Adv. No. 80–0462T.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Dec. 10, 1980.

Joseph E. Lewis, Thomas C. Zielinski, Reading, Pa., for debtor.

Kenneth C. Lundeen, Baltimore, Md., for Farmers and Mechanics Nat. Bank.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The issue presented to the Court for resolution is whether plaintiff, Farmers and Mechanics National Bank [hereinafter referred to as F & M], a secured creditor of the defendant–debtor, is entitled to relief from the stay imposed by 11 U.S.C. § 362(a) (1979). For reasons hereinafter given, we conclude that the stay should be modified to permit F & M to pursue its remedies under state law with respect to the debtor's interest [1] in the collateral, 5,112 shares of stock in Crown Oil and Wax Company of Delaware [hereinafter referred to as Crown],

1. The debtor's interest in the shares of stock is an equitable one, held as tenant by the entirety with his wife, Connie M. Gilece, who is not a party to these proceedings. Title to the 5,112 shares is presently in the name of George Basiliko. Notes of Testimony at 20 [hereinafter cited as N.T.].

constituting all of Crown's outstanding and issued shares.[2]

Although the factual background of this case is quite involved, we will state the pertinent facts as succinctly as possible.[3] Debtor, former president of Crown, executed a series of promissory notes and related agreements in favor of F & M on behalf of Crown, himself, and others and which are more fully described in F & M's proof of claim.[4] The effect of the execution of those documents by the debtor, and we so find and conclude, was to obligate the debtor personally, as principal or guarantor, on five promissory notes in the face amount of $1,075,000. These obligations are secured by the 5,112 shares of stock of Crown.[5] At the time of filing of debtor's Chapter 11 petition, the balance due F & M on the above notes was $1,665,276.39.[6]

We conclude, based on the testimony and documentary evidence presented, that F & M is indeed the holder of a valid perfected security interest in the debtor's interest in the 5,112 shares of Crown stock and therefore is the holder of an allowed secured claim. This conclusion rests upon the showing by F & M at the preliminary and final hearings of the validity and amount of its claim and the failure of the debtor to present any evidence whatsoever to contradict the bank's evidence.[7]

F & M now moves, pursuant to 11 U.S.C. § 362 (1979), to terminate the automatic stay so that it may be permitted to foreclose under applicable state law on its security interest in the Crown stock.[8] F & M asserts that it is entitled to relief on both of the alternative grounds provided for in § 362. We shall discuss those grounds in reverse order.

■ First, § 362(d)(2) requires the Court to grant relief from the stay if 1) the debtor has no equity in the property (§ 362(d)(2)(A)) and 2) such property is not necessary to an effective reorganization (§ 362(d)(2)(B)). On the issue of equity, the plaintiff has the burden of persuasion; on all other issues, the debtor–defendant has the burden of persuasion. 11 U.S.C. § 362(g) (1979).

In determining whether the debtor has any equity in his interest in the Crown stock (see footnote 1, *supra*) the Court must first determine the value of the stock, which is directly affected by the value of the Crown corporation. At hearing, F & M presented the expert testimony of Terry

**2.** This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

**3.** For additional background information, *See In re Gilece*, 1 B.R. 762 (Bkrtcy. E.D.Pa.1980), a decision of this Court rendered in a prior adversary proceeding within this bankruptcy case.

**4.** The proof of claim, with attachments, was admitted into evidence by stipulation of the parties, the defendant thereby making no admission, however, about the validity of F & M's claim. N.T. at 10–11.

**5.** *See* attachments F and G to F & M Exhibit No. 1.

**6.** At the preliminary hearing, which was consolidated with the final hearing (N.T. 104–106), counsel for F & M indicated that interest accruing since November 30, 1979 totaled $90,-806.70, "resulting in a total debt ... of $1,756,-083.09." N.T. at 4. *See* 11 U.S.C. § 506(b). F & M contends that interest continues to accumulate at the rate of $318.62 per day. Memo-

randum of Law of Farmers and Mechanics National Bank at 5.

**7.** Although the debtor testified that the validity of some or all of F & M's claim was subject to dispute, the quality of his evidence rose no higher than that of bald assertion. *See* N.T. at 18–19, 214–216.

**8.** Bankruptcy Code § 362(d) provides:
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

Weller.[9] Weller testified that the net asset value of Crown, based upon recent financial statements, and *excluding* the considerable liability to F & M, was $1,450,969. N.T. at 183. Mr. Weller's testimony was uncontradicted by any offering of the debtor. The witness was qualified and credible. We conclude that his testimony should be accorded substantial weight and adopt as a finding of fact his figure of $1,450,969 as being the net asset value of Crown.

F & M also presented extensive expert valuation testimony on the parcels of real estate owned by Crown, which includes nine properties,[10] some of which Crown leases on either a short–term or a long–term basis to gasoline station operators or to Shell Oil Company.[11] Of the nine properties, the fair market value of one was stipulated to by counsel,[12] and, with respect to the remaining eight properties, F & M presented the expert testimony [13] of two real estate appraisers, whose testimony was also uncontradicted by any offering of the debtor. We conclude that the testimony of the two appraisers should be accorded substantial weight because the witnesses were both qualified and credible. We conclude, based upon the uncontradicted expert testimony presented, that the approximate present fair market value of the Crown real estate is not in excess of $1,700,000.[14]

We must next determine what interest the debtor holds in the collateral. The 5,112 shares of Crown are held by the debtor with his non–debtor wife as tenants by the entirety. N.T. at 20. Recently, one of our colleagues held that "the Pennsylvania law on tenants by the entirety provides that

the debtor has an interest in the *entire* property, not just half, unless he does something to prejudice the rights of his spouse in that property." *In re Hockstein*, Case No. 80–00840G; Adversary No. 80–0600G, p. 6 (E.D.Pa. December 3, 1980) (Goldhaber, B. J.). Assuming, then, that the debtor's interest, for purposes of interpretation under § 362 of the Code, could be as much as an interest in the entire number of shares, and assuming further that the value of the Crown shares is equivalent to the net asset value of Crown, then we must conclude that the debtor has no equity in the collateral, since the value of the debtor's interest could not exceed $1,450,969, an amount substantially less than the amount of F & M's claim.[15]

█ The second part of the § 362(d)(2) analysis involves a determination by the Court of whether the collateral is "necessary to an effective reorganization." In order to prevail on this issue, the debtor must show (§ 362(g)(2)) that "the property sought to be foreclosed upon is necessary to effect a reorganization . . . [and that] there is a reasonable probability of a successful rehabilitation within a reasonable time." *In re Terra Mar Assocs.*, 3 B.R. 462, 465–466 (Bkrtcy. D.Conn.1980); *See also* 2 *Collier on Bankruptcy* ¶ 362.07[2] (15th ed. 1980) (". . . reference to an 'effective' reorganization should require relief from the stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations . . . .").

█ The evidence presented by the debtor on the "effective reorganization" issue consisted of his direct testimony that the

9. *See* N.T. at 166, 170.

10. *See* N.T. at 13–14.

11. *See* N.T. at 51–158.

12. N.T. at 119–120.

13. *See* N.T. at 52–55, 88–93, 130–131.

14. N.T. at 56, 101–102, 131, 119–120. The value of the real estate as testified to by F & M's appraisers was considered by Weller in his computation of the net asset value of Crown. N.T. at 182–183.

15. Debtor's counsel, during cross–examination of F & M's expert, questioned Weller about the value of Crown as a going concern. The witness responded that, in view of Crown's financial condition, it had no value as a going concern. *See* N.T. at 196–200. We conclude, in view of the testimony about Crown's present financial condition, that net asset value is the best approximation of the company's (and, therefore, the shares') true value. *See also* F & M Exhibits Nos. 2, 3, 4 and 14 (recent tax returns and net asset value computation).

shares of stock were indeed necessary to formulate a plan. N.T. at 215–216. This assertion, without more, cannot and does not constitute sufficiently probative, weighty evidence that there exists a reasonable prospect of reorganization for this debtor.

The debtor did offer one other reason why the prospects for proposing a plan exist. Crown, a prior Chapter XI debtor in this Court, is now before this Court again, pursuant to an order entered November 28, 1979, reopening the Crown estate.[16] The issues raised by the reopening have been submitted to the Court for decision, a decision which has not yet been rendered. The debtor contends that a "favorable" decision by this Court in the *Crown* reopening would enable him to propose a plan. *See* N.T. at 215–216. The narrow issue now before the Court in this adversary matter is whether under the provisions of § 362(d), F & M is entitled to relief from the stay vis–a–vis the debtor and his interest in the shares of Crown. The debtor has not shown that even the decision most "favorable" to him in the *Crown* reopening would affect our determination here. The debtor has presented no evidence that, even if this Court absolved Crown of all of its liabilities to F & M, then he, too, would be relieved of his liability to F & M.

Therefore, we conclude that this property is not necessary to an effective reorganization.

Our findings and conclusions thus far, entitle F & M to relief from stay under § 362(d)(2); however, we further conclude that F & M is also entitled to relief from stay under § 362(d)(1). At hearing, F & M presented evidence, through expert testimony, of the weak financial condition of Crown and of the fact that, with the end of this calendar year, Crown would lose the benefit of a substantial portion of a net operating loss carried forward for income tax purposes. *See* N.T. at 159–207. For these reasons, F & M contends that it should be permitted immediately to foreclose on the shares of stock and to market some of the real estate of Crown so that full advantage may be taken of the net operating loss of Crown (thereby either adding to or at least maintaining the value of its collateral, the shares of Crown stock). Based on the testimony and other evidence presented, we conclude that the debtor has failed to provide, and indeed is presently incapable of providing, adequate protection to F & M as required by § 362(d)(1).

For all of the above reasons, the stay imposed by 11 U.S.C. § 362 shall be modified.

---

**16.** *See In re Gilece*, 1 B.R. 762, 763 n.2 (Bkrtcy.   E.D.Pa.1980).