**In re CROWN OIL & WAX COMPANY OF DELAWARE, Debtor.**

**Bankruptcy No. 74–1099 (Reopened).**

United States Bankruptcy Court, E. D. Pennsylvania.

Feb. 12, 1981.

Jon A. Baughman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for debtor.

Kenneth C. Lundeen, Smith, Somerville & Case, Baltimore, Md., for Farmers and Mechanics Nat. Bank.

Horace A. Stern, Wexler, Weisman, Forman & Shapiro, P. C., David T. Sykes, Duane, Morris & Heckscher, Philadelphia, Pa., for Wexler, Weisman, Maurer & Forman, P. C. (now Wexler, Weisman, Forman & Shapiro, P. C.).

James L. Lekin, Miles & Stockbridge, Baltimore, Md., David C. Schattenstein, and Irving W. Coleman, Allentown, Pa., for Creditors' Committee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

This Court, on its own motion, and pursuant to findings of fact and conclusions of law rendered from the Bench, after hearing on November 28, 1979, and formally adopted by this Court on December 11, 1979, reopened the bankruptcy estate of Crown Oil & Wax Company of Delaware [hereinafter referred to as Crown]. Matters considered on reopening were: (1) the validity of the mortgages held by one of the creditors, Farmers and Mechanics National Bank, [hereinafter referred to as F & M],

on real estate owned by the debtor, and (2) what adverse effect, if any, the alleged invalidity of those mortgages may have had on (a) the rights, *inter se,* of Crown and F & M and (b) the rights of general unsecured creditors of this estate.[1] For reasons hereinafter given, we conclude that this estate should be closed without further judicial action.[2]

On November 15, 1980, John J. Gilece, Jr., then purporting to act on behalf of Crown, filed an application to reopen the Crown estate, as well as objections to the claim of F & M.[3] The estate was reopened pursuant to Rules 515 and 11–60 of the Rules of Bankruptcy Procedure.[4] Rule 515 "authorizes reopening of closed bankruptcy cases in a purposely broadened conferral of jurisdiction...." 12 *Collier on Bankruptcy,* Chapter 515 at 5–113 (14th ed. 1978).

Although there was discussion and argument about whether Bankruptcy Rule 11–41 could be applied under these circumstances, no participant in these proceedings requested relief thereunder.[5] *See* Notes of Testimony at 161–164 [hereinafter cited as N.T.]; Memorandum of Wexler, Weisman,

1. Partial Transcript at 9 (November 28, 1979). This Court previously entered an order on November 30, 1976, confirming a Chapter XI Plan for the debtor. The plan has since been consummated.

2. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

3. This Court later concluded that, although neither Mr. Gilece nor the attorney who filed those pleadings on behalf of Crown, Horace A. Stern, Esquire, possessed the authority from Crown to make such filings, the allegations contained in the pleadings warranted the reopening of the estate on the Court's own motion. *See Partial Transcript* at 5–9. Gilece has since been ousted as Crown's president. *See In re Gilece,* 1 B.R. 762 (E.D.Pa.1980).

4. Bankruptcy Rule 515, made applicable to Chapter XI proceedings by Rule 11–60, provides:

A case may be reopened on application by the bankrupt or other person to administer assets, to accord relief to the bankrupt, or for other good cause. The application shall be filed with the clerk of the district court having custody of the papers in the case. The case shall be referred forthwith for action on

the application and for further proceedings therein.

5. Bankruptcy Rule 11–41 provides:

Any party in interest may, at any time within six months after a plan has been confirmed, make a motion pursuant to the Act to revoke the confirmation as procured by fraud. The circumstances constituting the alleged fraud shall be stated with particularity. When such motion is made, the Court shall reopen the case if necessary and conduct a hearing on at least 10 days' notice to all parties in interest. If the confirmation is revoked—

(1) The Court may dispose of the case pursuant to Rule 11–42(b); or

(2) The Court may receive proposals to modify the plan. Thereafter, the procedure for modification and for confirmation of a plan as modified shall follow Rules 11–38 and 11–39, except that acceptance of the plan shall not be required by any creditor who has participated in the fraud and such creditor shall not be counted in determining the number and amount of the claims of creditors whose acceptance is required. If a modified plan is not confirmed, the Court shall dispose of the case pursuant to Rule 11–42(b).

Maurer & Forman, P.C. in Support of Court's Jurisdiction to Reopen Estate and Grant Relief to Debtor at 2–5. We conclude that the passage of time since confirmation (*i. e.*, almost four years), combined with the absence of any circumstances constituting fraud, precludes this Court from granting any relief pursuant to Bankruptcy Rule 11–41.

After formally reopening this estate, further hearings were held on February 13 and March 3, 1980, the focus of which was to determine whether F & M, at the time of the confirmation of Crown's plan, was in fact a secured creditor of Crown, as it purported to be and as evidenced by the filing of its proof of claim as a secured creditor in the amount of $995,807.74.

F & M claims that the debt owed to it by Crown, founded on a series of notes executed in F & M's favor, is secured by two indemnifying mortgages covering certain Crown real estate.[6] Certain "parties in interest" have come forward and assert that those mortgages held by F & M were and are invalid under applicable (Maryland) state law, thereby causing F & M's claim, then and now, to be unsecured.[7]

On December 10, 1980, pursuant to written opinion, this Court, in a separate but related proceeding, granted F & M relief from the stay imposed by 11 U.S.C. § 362 (1979), to permit F & M to "pursue its remedies under state law with respect to [John J. Gilece, Jr.'s] interest in [all outstanding and issued shares of Crown stock] . . . ," in which F & M, we concluded, held a valid perfected security interest.[8] The notes secured by the Crown stock were also secured (purportedly) by the so-called "indemnifying mortgages" given to F & M by Crown. The nature of the asserted defect is that the documents fail to contain, on their face, the stated principal amount, repayment of which they secured.[9]

---

6. An indemnifying mortgage is one given by one other than the principal obligor.

7. Those persons who have endeavored to cause the reopening of this estate and who seek a determination that the status of F & M's claim is unsecured are: 1) John J. Gilece, Jr. (former president of Crown); 2) Horace A. Stern, Esq., on behalf of Wexler, Weisman, Maurer and Forman, P.C., (counsel for Crown in the original Chapter XI case); and 3) James L. Lekin, Esq., on behalf of Miles & Stockbridge (whose firm has represented Crown in the past and who represents John Gilece "to some extent"). *See* N.T. at 6.

    Specifically, the relief sought is as follows: The Court should enter an Order

    (a) Reaffirming its order of November 28, 1979, reopening the estate under Rule 515 and Rule 11–60 of the Rules of Bankruptcy Procedure;

    (b) Invalidating the mortgages executed by Crown Oil & Wax Company in favor of Farmers and Mechanics National Bank on February 22, 1971, and July 18, 1974;

    (c) Reclassifying the claim of Farmers and Mechanics National Bank (Claim No. 49) as an unsecured claim in the sum of $995,807.74, and allowing it as such;

    (d) Invalidating the agreements giving Farmers and Mechanics National Bank control over the affairs of Crown Oil & Wax Company;

    (e) Directing Crown Oil & Wax Company to deposit, within a reasonably practical time, the sum necessary to pay Farmers and Mechanics National Bank 13½% of its claim as allowed, and to repay to Farmers and Mechanics National Bank the $125,000.00 advanced by the latter in connection with the funding of the arrangement, plus interest as provided in the note evidencing that obligation; and

    (f) Providing that a Supplemental Order of Final Distribution issue in due course, authorizing the aforesaid payments to Farmers and Mechanics National Bank.

Supplemental Memorandum of Wexler, Weisman, Maurer & Forman, P.C., in Support of Court's Jurisdiction to Reopen Estate and Grant Relief to Debtor at 21–22 [hereinafter cited as the Wexler Supplemental Memorandum].

8. *In re Gilece*, 7 B.R. 469, Case No. 79–02202T, Adversary No. 80–0462T (E.D.Pa. December 10, 1980). That decision was the subject of an appeal to the United States District Court. By order dated February 10, 1981, this Court approved a dismissal of that appeal pursuant to stipulation of the parties.

9. The Maryland Statute provides:

    7–102(a). No mortgage or deed of trust may be a lien or charge on any property for any principal sum of money in excess of the aggregate principal sum appearing on the face of the mortgage or deed of trust and expressed to be secured by it, without regard to whether or when advanced. This subsection does not apply to a mortgage or deed of trust to indemnify the party secured against loss from being an endorser, guarantor or

## I

■ This Court's primary concern and focus is as stated in the Bench Order reopening this estate and setting a hearing:

That hearing will enable all creditors and parties in interest, including the parties and counsel present today, to participate in a full and open hearing of the mortgage validity question and how, if at all, creditors may have been adversely affected thereby. In this matter, all interests will have been fully noticed, fully heard and fully protected including the interest of this Court in upholding the integrity of the Court's own proceedings and orders.

Partial Transcript at 10 (November 28, 1979).

The impetus for the Court's reopening this estate on its own motion was the concern, not only that F & M's "security" may be invalid under state law, but the allegations "(a) that Farmers & Mechanics National Bank *knew*, prior to November 30, 1976, when applicant's arrangement was confirmed, that its mortgage was fatally defective, and (b) that it *concealed* that fact from applicant, from other creditors, and from the Court" [emphasis added].[10] We conclude, based on the entire (and voluminous) record before this Court, that there has been no showing by any participant(s) in these reopening proceedings that F & M or its officers either knew or concealed the "fact" that the mortgages on which its secured claim rested were defective under state law. Therefore, we do not reach the issue of whether the mortgages involved are, in fact, fatally defective under state law.

All of the participants, including the proponents of the reopening, had available to them at the time of the original Chapter XI proceeding, the documents now under scrutiny. All had equal opportunity, indeed, the obligation, to call to this Court's attention such alleged defects in the mortgage prior to confirmation of the plan, a plan which has now been consummated. The parties involved proceeded on the assumption that F & M's security was valid and the plan was confirmed and performance by the debtor concluded on that basis. We find nothing in the record before us which suggests 1) knowledge by any person(s) of the alleged defects (until 1979); 2) concealment of any such knowledge; or 3) any affront to the integrity of this Court or to the judicial process. In view of this, we decline to disturb this *fait accompli.*

## II

Alternatively, we will discuss the other purpose for the reopening: to determine who, if anyone, would have been injured, if in fact F & M's claim were unsecured by virtue of the alleged defects in the mortgages. Assuming, but not deciding, that F & M's security was defective, we conclude that no creditor would have been adversely affected at confirmation or is now adversely affected by virtue of our determination to permit to stand the status quo.[11]

In determining whether any injury would have been visited upon the general creditors had the mortgages been fatally defective, we look first to the remedies suggested by "the moving parties," as set forth in footnote 7, *supra.*[12] Essentially, the Court is being asked to declare invalid the mortgages held by F & M, reclassify F & M's claim

surety or to a mortgage or deed of trust to secure an indemnity agreement.

Md.Real Prop.Code Ann. § 7–102(a).

**10.** Application of Debtor to Reopen Estate under Rules 515 and 11–60 of the Rules of Bankruptcy Procedure, ¶ 9. This application became moot in view of the Court's reopening of this estate on its own motion.

**11.** At the hearings on this matter, few creditors *or parties in interest attended*—even though notice went forward to all creditors listed on the original Chapter XI schedules. Neither co-counsel for the unsecured creditors' committee

chose to participate in any manner. Although we do not consider it dispositive of any issue raised, we do note the almost total absence of any creditor interest in these "reopening" proceedings. *See* N.T. at 4–7, 396.

**12.** We use the term "moving parties" in a broad sense, since this estate was reopened by the Court *sua sponte.* However, we do recognize that it was those parties previously mentioned in footnote 7, *supra,* who first formally moved for reopening and who took upon themselves the "burden" of presenting evidence in support of the Court's ordering the various

as an allowed unsecured claim, and direct the debtor to pay and F & M to accept in full satisfaction of the F & M debt, 13½% of its claim, the same percentage payment made to all unsecured creditors under the previously confirmed Plan. Wexler Supplemental Memorandum at 21. The question arises, however, of who would benefit from the "relief" requested.

General creditors would not benefit, since no additional distribution to them is proposed. Indeed, no non-attorney, general, unsecured creditor has requested any additional distribution. It does not appear that the debtor would benefit, even though the debt owed F & M would be declared unsecured, since the 13½% payment would amount to $134,434.04. In addition to that sum, the "moving parties" have requested that the Court direct the debtor to repay F & M the $125,000 advanced originally by F & M for funding of the plan. The debtor corporation, through its authorized representatives, has consistently opposed the reopening and the granting of any relief. Therefore, we conclude that the debtor does not believe that it would benefit from any further judicial action.[13]

F & M, too, not unexpectedly, has consistently opposed the reopening and the granting of any additional relief.

That leaves only one remaining individual, John J. Gilece, Jr., who might benefit from this Court's granting the relief prayed for. Gilece, then purporting to act as president of Crown, was the individual who filed the application to reopen this estate. This Court later found that neither Gilece nor Horace Stein, Esquire, had been authorized by Crown to file said application. Partial Transcript at 5–7, 9. Gilece, at the time of the reopening of the estate, held an equitable interest in all of the issued and outstanding shares of Crown stock, an interest which we have already found is subject to—and of lesser value than—a valid perfected security interest held by F & M and on which we have already, in the context of Gilece's personal Chapter 11 proceeding, granted F & M relief from the stay imposed by 11 U.S.C. § 362(a) (1979).[14] We conclude that Gilece has no remaining interest in Crown; moreover, even if Gilece were deemed to have retained some interest (in the legal sense) in Crown, he has made no showing that any such interest has been or would be adversely affected by our particular resolution of the present matter.

### III

There remains one allegation made by the "moving parties" concerning the relationship between F & M and Crown, which we describe by quoting from a previous opinion in a *Gilece* adversary proceeding:

> ... Crown's board of directors presently consists of three persons: the debtor, Gilece, who now owns a 50% beneficial interest in the capital stock of Crown; Guy W. Nusz, Chairman of the board of directors of both Crown and Farmers and Mechanics National Bank ("F&M"); and Richard A. Dent, Senior Vice President of F&M and who now holds himself out as Crown's new president.
>
> F&M, at trial and at the time of Crown's Chapter XI confirmation, purported to be a creditor of Crown, secured by a certain real estate mortgage or mortgages. *In exchange for funding Crown's Chapter XI plan*, F&M obtained, by a document entitled "Loan, Security, and Irrevocable Proxy Agreements" ..., and a document entitled "Stock Assignment Agreement" ..., what amounted to full voting control over all the shares of Crown [emphasis added].

---

proposed remedies as quoted in footnote 7, *supra*. *See* N.T. at 8–9.

13. The "moving parties" assert that the debtor's position is dictated by F & M, since F & M controls the voting rights to all of Crown's stock and, in turn, controls the Crown board of directors as well. The significance of this relationship shall be dealt with in Part III of this Opinion.

14. *In re Gilece*, 7 B.R. 469, Case No. 79–02202T; Adversary No. 80–0462T (E.D.Pa. December 10, 1980). Gilece filed for relief under Chapter 11 of the new Bankruptcy Code on November 30, 1979. *See also In re Gilece*, 1 B.R. 762 (E.D.Pa.1980) (Adversary No. 79–0026).

*In re Gilece,* 1 B.R. at 764. The Court is now being asked to "invalidate" the agreements giving F & M control over Crown. Wexler Supplemental Memorandum at 21. This we decline to do.

In that adversary proceeding, Gilece made the same argument, after which we stated:

> We cannot conclude [for purposes of the *Gilece* adversary proceeding], based on the evidence presented at trial and in the parties' memoranda, that these documents, effectively giving F&M control over Crown, were anything other than voluntary, arms-length agreements between the debtor and F&M.

1 B.R. at 764.

After having been further presented with an abundance of testimony and after careful review of the legal memoranda provided prodigiously by counsel, we still cannot conclude, based on this separate, independent record, that these agreements are anything other than voluntary, arms-length agreements between the debtor and F & M.

Crown had originally filed for relief under Chapter XI of the old Bankruptcy Act on December 11, 1974, but was adjudicated a bankrupt on August 13, 1976.[15] However, on November 22, 1976, the order of adjudication was vacated and on November 30, 1976, the Crown plan was confirmed. A key ingredient which enabled Crown to fund a plan and to move that the order of adjudication be vacated was a loan in the amount of $125,000 made by F & M to Crown, in exchange for which the series of documents in question was executed, effectively giving F & M control over Crown.

That the execution of these agreements were conditions precedent to the granting of the loan to Crown was known to the Court and to all parties concerned. This appears of record in the notes of testimony of the hearing held to determine whether the Court should vacate its order of adjudi-cation. N.T. at 23–33 (November 22, 1976).[16]

We are not concluding that, because all of the parties to these transactions had the same factual and legal information at their disposal when they entered their deal in 1976, any alleged defect is cured. We are concluding that this series of agreements was the result of arms-length bargaining, involving a trade-off by Gilece and the debtor, who relinquished control to F & M for the purpose of keeping Crown in operation. In fact, we are convinced that without the F & M loan, Crown would have been unable to fund successfully an acceptable plan. We are further concluding that no creditor in this case was or is harmed by the existence, at time of confirmation or now, of any alleged defect, even if a defect is presumed to exist.

This estate shall be closed.

---

**15.** Although Congress has since passed the new Bankruptcy Code (codified at 11 U.S.C.), the Bankruptcy Act of 1898 [referred to as the Bankruptcy Act] still governs all cases filed prior to October 1, 1979. *See* Bankruptcy Re-form Act of 1978, Pub.L.No.95–598, Title IV, § 403(a), 92 *Stat.* 2683 (1978).

**16.** That hearing was attended by Messrs. Gilece, Stern and others.