**In re STN ENTERPRISES, INC. d/b/a Atwater Arms, Debtor.**

**Bankruptcy No. 84–98.**

United States Bankruptcy Court, D. Vermont.

Nov. 21, 1984.

 

Saul L. Agel, Burlington, Vt., for Frank Vener.

John Canney, III, and Holly Nelson, Rutland, Vt., for debtor.

Jerome I. Meyers, Norwich, for Creditors' Committee.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The Court has for determination the Motion of Frank B. Vener for Relief from Automatic Stay and for Recovery from the debtor of a Texas Paterson Colt revolver, Serial No. 157. This Motion was filed on July 30, 1984 and was Amended on September 17, 1984.

## BACKGROUND

STN Enterprises, Inc. is a corporation which was organized on August 6, 1982. It has been engaged in the purchase and sale of collectible firearms and related collectibles doing business as "Atwater Arms". Stephen T. Noyes was its president and sole stockholder. The directors were Stephen T. Noyes, Janice Noyes, his wife, and John W. Wilkinson. The driving force behind the corporate business was Stephen T. Noyes and it was conducted solely by him although the corporation retained the services of Wayne D. Wetzel, Jr., as a consultant, from October, 1983 until May, 1984. Noyes did all of the buying and selling and was in charge of all negotiations whereas Wetzel took on the duties of an administrator supervising the accounting and insurance program and assisting Noyes in the investment program relating to the so-called San Antonio Collections involving the purchase of 77 individual antique firearms. Noyes died on May 5, 1984 as the result of injuries received in an automobile accident and for several weeks prior to his death STN Enterprises, Inc., was having financial difficulties. These apparently precipitated the filing of a Petition for Relief under Chapter 11 of the Bankruptcy Code on June 28, 1984. The Schedules show total liabilities of $13,973,495.00 and assets of $5,284,415.05. Included in the assets are Bennington Firearms inventory and Greenwich Firearms inventory, listed at an estimated market value, without forced sale, of $2,500,000.00 and $1,500,000.00, respectively.

The business of the debtor was conducted from the residence of Noyes in Bennington, Vermont, where he also maintained a room for display of firearms.

## FACTS

Frank Vener, a businessman, whose address is 49 Riverside Avenue, Westport, Connecticut, first met Noyes in Bennington, Vermont several years ago. About two months prior to February 2, 1984, Vener traveled to Bennington with a friend by the name of Jim Ross, where he visited Noyes at his residence, reviewing his gun display and talking with him about the gun business. Noyes told Vener that he would like him to purchase a firearm when he found one that would be desirable. About a week prior to February 2, 1984, Noyes spoke to Vener about the sale of the gun hereinafter described which Vener checked out with a friend of his who was a collector and was informed that it was a good buy. Vener also checked with another party and was, likewise, informed that he was getting a good buy. On the basis of these recommendations Vener did purchase from the debtor a Texas Paterson Colt revolver, cased set with all accessories and finished in blue and case hardening, Serial No. 157, excellent condition, for the sum of $50,-000.00. This purchase was evidenced by a receipt dated February 2, 1984, transmitted by the debtor to Vener on a statement headed "Atwater Arms" and it contained a notation signed by Noyes reading: "to be paid via bank wire week of 2–6–84". Pay-

ment of the $50,000.00 was actually made through a wire transfer from the Federal Reserve Bank for $50,000.00 with a credit of the account of Atwater Arms by order of Frank Vener on February 10, 1984. At the time of purchase Noyes notified Vener that the gun would be kept in a vault in Connecticut. Vener was satisfied with this arrangement since he felt that it was safe there and Vener did not wish to take out insurance for the firearm.

Under the arrangement for the sale and purchase of the gun Vener was supposed to get a UCC filing statement and a bailment certificate. This was suggested by Noyes but Vener never received the bailment certificate but did, in fact, receive the UCC financing statement form which contained the notation "please sign both UCC forms and return them, intact to: Atwater Arms, P.O. Box 696, Bennington, Vermont 05201". These forms show STN Enterprises, Inc. as debtor and Mr. Frank Vener as secured party and contained a description of the Colt revolver purchased by Vener. They were signed by Vener and returned to the debtor. They were never filed either in the office of the Bennington Town Clerk or that of the Secretary of State. Vener understood that the purpose of the financing statement was to protect his interest in the gun, and after completing it and sending it back to the debtor he never saw it again.

Vener attended the meeting of creditors of the debtor in May, 1984, at which time, at the request of the debtor, he signed a statement of his claim which showed that on February 10, 1984 he paid the sum of $50,000.00 for the purchase of a Texas Paterson Colt revolver cased set with all accessories, serial No. 157, excellent cond. The purchase of this Texas Paterson Colt revolver was the only transaction between Vener and the debtor and it was to be kept in the vault of the debtor until Vener decided what he wanted to do with it, the ultimate goal being to sell it.

Vener assumed that Noyes was a trader in guns and that he was selling those to which he had title. At the time of purchase Vener had no immediate plan to sell

the Colt revolver. He had no goal as to the amount of profit to be received from its sale and no goal as to when he would sell it.

Shortly after February 2, 1984, Vener received a statement describing the Texas Paterson Colt revolver which he had purchased and indicating that it had been appraised at a fair market value of $75,000.00 by R.L. Wilson, noted author, collector and consultant to antique arms collectors. This statement also contained a paragraph describing the "specific investment program" which related to a San Antonio collection— 77 individual antique firearms, and indicating that the investor would be paid a profit at the rate of 4% per month with the minimum return of 16% and the maximum return of 24%, as to which the investor could expect payment upon sale of his individual firearm. Vener did not read the statement as to the specific investment program until he had purchased the revolver and, although he had discussed the San Antonio collection with Noyes, he was very specific that he was only interested in the purchase of one gun. Vener never told Noyes that he could sell the gun nor did he tell him that he could not sell it. Noyes never charged for storage nor did he ever discuss any storage charge with Vener.

The debtor came into possession of the Texas Paterson Colt revolver on or about the 15th of February, 1984 and it was delivered to the Greenwich, Connecticut vault on the 17th day of February, 1984; was brought to Bennington on the 30th of April, 1984, and on June 1st was transferred to Albany, New York following the death of Noyes where it remained until August 31, 1984, on which date it was again transferred from Albany, New York to the Greenwich, Connecticut vault where it still is. The weapon is included in the inventory as part of the assets of the debtor.

After the purchase of the Texas Paterson Colt revolver Vener left it with the debtor solely for safekeeping with no intention as of that time to sell it.

## DISCUSSION

The issue in this case is whether the transaction between Vener and debtor was (a) one involving a security interest; (b) a sale or return; or (c) a true bailment. The facts in this case clearly establish that a "true bailment" was intended by the parties.

A "bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. 8 Am.Jur.2d 738 § 2.

In the instant case the sale of the firearm by the debtor to Vener was the only transaction between the parties and title to it is based upon payment of the sum of $50,000.00 by Vener to the debtor, and this occurred on February 10, 1984, all in accordance with the agreement between the parties. Under the Uniform Commercial Code, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties. Title 9A § 2-401(1).

Upon the payment of the $50,000.00, there was compliance with the manner and conditions agreed upon by the parties. Title passed. Vener agreed with Noyes, the agent of the debtor, to leave the firearm with the debtor solely for safekeeping, especially since he did not wish to take out insurance for the weapon. At that time he was aware that the debtor maintained a showplace in Bennington, Vermont, but he had no knowledge that the debtor through Noyes was engaged in the business of buying and selling firearms other than those that belonged to the debtor. Further, Vener did not have any immediate plan to sell the Colt revolver. Under these circumstances, the transaction clearly comes within the definition of a "true bailment."

Without a contemplated sale by Vener, the transaction cannot be construed as a sale or return within the parameters of the Uniform Commercial Code. Title 9 § 2-326(1)(b) defines a "sale or return" as one where goods are delivered primarily for resale. Therefore, since the transaction was not a "sale or return" there was no requirement that Vener comply with subsection (3) of § 2-326 of Title 9 with reference to displaying a sign or establishing that the debtor was generally known by his creditors to be substantially engaged in the goods of others or the filing of a financing statement in the proper places. Vener's position as a bailor is buttressed by the fact that Noyes had agreed to send him a bailment certificate although he failed to do so.

It is true that Noyes did in fact forward to Vener a U.C.C. financing statement which Vener signed and returned, but this in and of itself under the facts in this case, would not establish that a security interest transaction was intended by the parties. Vener assumed that the purpose of signing this statement and returning it to the debtor was to protect his interest as bailor. He signed the statement and returned it without the benefit of legal counsel.

The net result is that the gun was left with the debtor for safekeeping only and it remained the property of Vener as owner. The debtor as bailee was obligated to hold it for Vener's benefit. Under bankruptcy law, absent state statutory enactment to the contrary, if property was in a debtor's hands as bailee or agent, the trustee (in this case the debtor by virtue of § 1107) holds it as such, and the bailor can recover the property or its proceeds. 4 Collier 15th Ed. 541-40 § 541.08. See also *In Re Veon, Inc.*, (Bankr.W.D.Pa.1981) 12 B.R. 186, 188; *Matter of Wright-Dana Hardware Co.*, 211 F.908 (2d Cir.1914); *In Re Keith*, 1 UCC Rep. Ser 347; *In Re Cox Cotton Company* (E.D.Ark.1982) 24 B.R. 930, 935; *Devita Fruit Co. v. FCA Leasing Corp.*, 473 F.2d 585 (6th Cir.1973); *Allgeier v. Campisi*, 117 Ga.App. 105, 159 S.E.2d 458 [5 UCC Rep 93] (1968).

Also, it has been held that where the nature of the transaction is a true consignment, title to the merchandise remains with the consignor and does not inure to the benefit of the consignee's creditors or the bankrupt's trustee. *Allgeier v. Campisi,* 117 Ga.App. 105, 159 S.E.2d 458 [5 UCC Rep 93] (1968); *In re Griffin,* 1 UCC Rep 492 (1960); *In re Mincow Bag Co., Inc.,* 24 N.Y.2d 776, 288 N.Y.S.2d 364, 248 N.E.2d 26 (1969).

In sum, since the transaction between Vener and the debtor was a "true bailment" Vener is entitled to recover possession of the firearm.

### ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED:

1. The automatic stay prescribed by § 362 of the Bankruptcy Code is TERMINATED.

2. The debtor shall deliver to Vener the Texas Paterson Colt Revolver, Serial No. 157, within ten days of the date of this Order.