**In re STATE OPTICAL CO., INC. (Jointly administered with) National Contact Lens Center, Inc., No. 86–04833 and Contact Lens Center, P.C., No. 86–04834, Debtor.**

**Bankruptcy No. 86–04834F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 13, 1987.

Lawrence J. Tabas, Charen and Goldberg, Philadelphia, Pa., for debtor, State Optical Co.

Barry D. Kleban, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for Bausch & Lomb, objector.

Drew Salaman, Salaman and Salaman, Philadelphia, Pa., for Colburn Optical Industries, Inc., objector.

Kenneth F. Carobus, Morris and Adelman, Philadelphia, Pa., for Philadelphia Newspapers, Inc., objector.

## OPINION

BRUCE FOX, Bankruptcy Judge:

The debtor[1] sent notice of its intent to continue paying its president and chief executive officer, Harry Breitman, his annual salary of $104,000.00 and to continue paying its executive vice president, Terrence Maher, his salary of $65,000.00.[2] Three creditors filed objections to the proposal concerning Dr. Breitman and one creditor filed an objection concerning the proposed compensation of Mr. Maher. At the hearing held on these objections, the sole objection to Mr. Maher's salary was withdrawn. Nonetheless, I have "the authority to review the proposed compensation ... even though no party in interest has objected."

1. There are three debtors all closely related, whose bankruptcies are being jointly administered. The term debtor will be used to refer to all three debtors. Dr. Breitman and Mr. Maher are employed in the same capacity by all three debtors and payment for their services is apportioned among the debtors based upon a percentage of gross revenues.

2. Notice was sent pursuant to Local Bankr. Rule 4002.1.

*In re Athos Steel and Aluminum, Inc.,* 69 B.R. 515, 520–521 (Bankr.E.D.Pa.1987).[3]

The debtor sells eyeglasses, contact lenses and related supplies and maintains an optometrist, at least part time, in each of its stores. At one time, it had 20 stores in Pennsylvania and New Jersey, but now has only 14 (which may soon be reduced to 11). Its last profitable year was 1984 when gross revenues exceeded $8 million. Since that time, gross revenues have fallen to approximately $6.5 million.

■ As executive vice president, Mr. Maher is responsible for reviewing the debtor's daily sales, inventory supplies, cash flow, advertising campaign, and the day to day operations of each store. He has a background in advertising and so he is active in designing the advertising used by the debtor in the various media. He also travels to each store periodically and has use of a company car, which is leased. Although his cash salary is $1,250.00 per week, ($65,000.00 per year), the debtor allocates $50.00 per week of the company car's leasing charge to Mr. Maher, so the debtor considers his salary to be $1,300.00 per week.

By all accounts, Mr. Maher is a talented, valued employee of the debtor. Since the debtor filed for bankruptcy, information to and negotiation with the creditors has come principally from Mr. Maher and those creditors have been favorably impressed. As a result, no objections have been pressed to his annual compensation. Moreover, his salary was established at an arms length negotiation with the president based upon his performance and that of the debtor. I believe his salary of $1,250.00 per week should continue.[4]

3. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rules 9014, 7052.

4. Since the automobile lease may or may not be assumed by the debtor under 11 U.S.C. § 365, I agree with the creditors that it would be unwarranted to add a portion of that lease cost to his salary.

■ The founder, president and chief executive officer of the debtor is Dr. Harry Breitman, a doctor of optometry who has been an optometrist for twenty years. The debtor currently has approximately 150 employees in its 14 stores. Gross revenues have declined to $6.5 million per year. As the debtor's chief executive, Dr. Breitman supervises all the other optometrists, (approximately twenty), develops the marketing program for the company (in conjunction with Mr. Maher), decides all company policies, is directly responsible for executive hiring and firing, makes the ultimate financial decisions, and oversees business operations. Dr. Breitman also serves as an optometrist when needed. He is the principal shareholder and set his own salary, which was increased between 1985 and 1986 by approximately $10,000.00 from $94,000.00 per year to $104,000.00. That salary does not include his use of a company automobile.

A certified public accountant testified that a salary of $100,000.00 to $130,000.00 is normal for chief executives of retail companies with gross sales of approximately $6 million.[5] In his view, the duties of the executive, rather than company profitability, were the primary determinant of reasonable compensation. That may be so, but profitability and size of the company must be of some relevance and here both the size and profitability have diminished. Moreover, the filing of bankruptcy will naturally increase an executive's duties, requiring him to attend meetings with attorneys, attend court hearings, arrange postpetition financing and seek to improve employee morale. While these new responsibilities are necessary if the business is to reorganize, they must be discounted where the chief executive/principal owner is concerned. The added responsibilities represent an additional "investment" into the company and discounting their value helps convince the creditors that all the key parties must compromise if the business is to survive.

Evaluating both the duties of Dr. Breitman, the recent decline in the debtor's business, the method by which his salary was established, the testimony of the debtor's accountant and the objections of the creditors, I conclude that a justified compensation is $1,700.00 per week or $88,400.00 per year. Even at this reduced rate, Dr. Breitman has every reason to increase the debtor's fortunes and successfully reorganize his company. If he does so, I would be willing to entertain a motion to increase his compensation to that which existed prepetition. *See* Local Bankr. Rule 4002.1(b) (compensation may not exceed annual rate as of 90th day prior to bankruptcy filing).

An order consistent with this opinion will be entered.

---

5. Unfortunately, the testimony was not specific as to the eyewear industry.