In re Alvaro J. MUNOZ and Bonnie Lynn Munoz, Debtors.

John A. GRIMES, Plaintiff,

v.

Alvaro J. MUNOZ and Bonnie Lynn Munoz,

and

Meyer Simon, Esquire, Defendants.

Bankruptcy No. 87–03871F.
Adv. No. 87–0820F.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 9, 1988.

Robert Lapowsky, Rubin, Quinn & Moss, Philadelphia, Pa., for debtors.

Jay Ochroch, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for John Grimes.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The instant motion for relief from the automatic stay presents difficult issues for resolution engendered by the bankruptcy of the sole shareholder and principal of a closely held corporation. Unfortunately for the corporate shareholder/principal, the stock of the corporation was pledged as security by him to the former owner of the stock of the corporation when the stock was purchased. Because the former owner/pledgee is not receiving required payments, he now seeks relief from the stay to enforce his security interest in the stock and an order requiring that the escrow agent turn the stock over to him.[1]

1. Two matters are actually involved—a motion for relief from the stay and an adversary pro-    ceeding seeking turnover of the stock.

For the reasons discussed below in findings of fact, conclusions of law and a discussion, relief from the stay will be granted. However, I will decline to order turnover of the stock.

## FINDINGS OF FACT

1. The instant matters have been heard in the context of the bankruptcy of Alvaro and Bonnie Lynn Munoz, which was filed under Chapter 11 of the bankruptcy code on July 31, 1987. Also relevant to the dispute between the parties is the bankruptcy of Jesseco, Inc.. which was filed under Chapter 11 in September, 1986 and is likewise pending before me. Alvaro Munoz is the sole shareholder and principal officer of Jesseco. *See generally, In re Jesseco,* Bankr. No. 86–04386F, unpublished memorandum (Bankr.E.D.Pa., January 22, 1988). Jesseco is in the business of renting video tapes to the general public.

2. The other party to the instant dispute is John Grimes, the former owner of Jesseco. Grimes is the movant in the instant motion for relief from the stay and the plaintiff in the instant adversary proceeding seeking turnover of Munoz' Jesseco stock certificates.

3. The escrow agent holding the various shares of Jesseco stock is a defendant along with the Munozes in the turnover action.

4. Munoz became indebted to Grimes on July 24, 1985, when he purchased shares of Jesseco stock from Grimes for $250,000.00. Munoz paid $50,000.00 in cash for the stock and agreed to pay the balance of $200,-000.00 within two years with interest payable monthly at a rate of ten (10%) percent per annum.

5. As security for the payment of the $200,000.00 balance of the purchase price, Munoz granted Grimes a security interest in the stock being transferred. The stock was to be held by an escrow agent. The pledge agreement provides that Munoz' failure to make payment on the obligation requires the escrow agent to deliver Munoz' Jesseco stock to Grimes. (Debtor's Exhibit 12)

6. Grimes has received no payment of interest and/or principal on account of Munoz' $200,000.00 obligation since at least July, 1987.

7. The parties agree that Munoz has no equity in the shares of Jesseco stock insofar as they are worth far less than the $200,000.00 security interest of Grimes in the stock.

8. Alvaro Munoz testified and offered other evidence that without the shares of stock, he and his wife will be unable to reorganize. The proposed reorganization plans in the Munoz and Jesseco bankruptcies were entered into evidence. The Munoz plan assumes Munoz' continued control of Jesseco, and confirmation of a plan of reorganization for Jesseco. Munoz also assumes that after Jesseco's plan is confirmed, Jesseco will increase his salary from $39,000.00 [2] per year to $100,000.00 through the elimination of two present Jesseco store managers. In addition, the Munoz and Jesseco plans call for Mrs. Munoz to be placed on the Jesseco payroll at a salary of $22,000.00 plus payment of various other income to the Munozes. Munoz testified that without control of the Jesseco stock, either in himself or in his family, his plan will fail because he will have no control over his position or salary at Jesseco. Grimes candidly admits that if he gets control of the Jesseco stock, he will fire Munoz.

9. I conclude that Munoz' continued possession of the Jesseco stock is necessary for the Munozes' to successfully reorganize. To the extent that Munoz offered evidence which indicates that his possession of Jesseco stock is essential to Jesseco's effective reorganization, I find such evidence to be irrelevent.

10. Although Munoz' Jesseco stock is not worth $200,000.00 so as to make Grimes a fully secured creditor, I conclude based on the following evidence that the

---

**2.** On October 9, 1987, I entered an order limiting Munoz' compensation to $39,000.00 in the Jesseco bankruptcy. *See generally, In re State Optical Co., Inc.,* 70 B.R. 82 (Bankr.E.D.Pa. 1987).

stock has some value, thus making Grimes a partially secured creditor.

11. Testimony was offered by Grimes' expert witness[3] which indicates that the liabilities of Jesseco exceed its assets, both now and at the time the bankruptcy was filed. Both Grimes' expert and Munoz testified, however, that Jesseco's financial picture is improving. The Jesseco plan calls for Munoz' brother to invest $50,000.00 of new capital in the business. With that infusion, Munoz anticipates that Jesseco will earn approximately $162,000.00 over the next thirty months after deducting a $100,000.00 salary for himself as president of Jesseco, plus a $22,000.00 salary for his wife.

12. It is clear from the evidence that control over Jesseco has some significant monetary value. Not only does control allow the majority holder to appoint an officer or officers who draw a significant salary,[4] but also Jesseco's financial picture, in bankruptcy, appears to be improving. Although shares of Jesseco may have no book value, they have fair market value insofar as Jesseco continues to have significant assets including a large library of video tapes and a potential for reorganization.[5] Moreover, I note that the fact that both Grimes and Munoz continue to fight for the stock indicates that both parties to this dispute believe that the shares independently, or control of the corporations through its shares, have some value.[6]

13. I conclude that the stock of Jesseco, in which Grimes has a security interest, is worth substantially in excess of $10,000.00, but less than $200,000.00. This makes Grimes a partially secured creditor entitled to adequate protection.

14. Given that Grimes is receiving no postpetition payments on principal and no other consideration from the debtors, the only adequate protection being offered by the debtors here is that of their proposed bankruptcy plan.

15. The proposed Munoz' bankruptcy plan calls for Grimes to be treated as an unsecured creditor. The plan provides that unsecured creditors are to receive "5% of their allowed unsecured claims in five equal annual installments of 1% each." See debtor's Exhibit 11. Under the Munoz plan, Grimes would receive approximately $10,000.00 on his claim over a five year period.

16. Also relevant to adequate protection is the Jesseco bankruptcy plan which calls for current Jesseco stock to be cancelled. See Debtor's Exhibit 9. Neither the Munoz plan nor the Jesseco plan provides any new lien or other security to Grimes to replace that which will be lost if the Jesseco stock is cancelled.

## CONCLUSIONS OF LAW

1. Although the Munozes have no equity in the Jesseco stock, the stock is needed for an effective reorganization so that relief from stay under 11 U.S.C. § 362(d)(2) must be denied.

2. Grimes has an interest in stock owned by Munoz. The Munozes did not carry their burden to establish that this interest is being adequately protected. Thus, Grimes is entitled to relief from the stay pursuant to 11 U.S.C. § 362(d)(1) for cause.

3. An order requiring turnover of property by the escrow agent to Grimes is not warranted and consequently judgment in the adversary proceeding for the defendants is appropriate.

## DISCUSSION

11 U.S.C. § 362(d) essentially provides two alternative grounds when relief from the automatic stay is mandated:

---

3. At hearing, the witness was ruled qualified as an expert in accounting only. Although Grimes sought to have the witness qualified as an expert in stock valuation, the expert admitted that he has never valued stock before.

4. Like Munoz, Grimes has experience in the video rental business.

5. The Jesseco plan and Munoz testimony suggest that a $50,000.00 investment from the brother of Mr. Munoz is expected to generate this substantial income.

6. Strangely, Grimes himself argues that the stock has no value. He may be confusing value with equity.

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

■ 11 U.S.C. § 362(g) assigns the burden of proof in contested matters concerning relief from the automatic stay. The creditor has the burden of showing a lack of equity to prevail under § 362(d)(2). *See* 11 U.S.C. § 362(g)(1). The debtor has the burden of proof on all other issues, including issues under § 362(d)(1). *See* 11 U.S.C. § 362(g)(2). This includes the burden to establish that the movant is adequately protected. *See e.g. In re Allstar Building Products Inc.,* 834 F.2d 898 (11th Cir.1987) (en banc).

In opposing relief from the stay the debtors present several arguments. Upon admitting that the debtors have no equity in the property, they argue first that the property is "needed for an effective reorganization." *See generally, United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *In re Moore & White Co., Inc.,* 83 B.R. 277 (Bankr.E.D.Pa.1988); *In re Air Vermont, Inc.,* 44 B.R. 440, 446 (Bankr.D.Vt.1984).

■ Given the evidence presented that the Munozes need income from employment at Jesseco to reorganize and that they likely will not be able to retain such income absent control of the Jesseco stock, I conclude that Munoz' continued ownership of the stock is indeed necessary for an effective reorganization. Consequently, relief from the automatic stay under § 362(d)(2) must be denied.

■ Unfortunately for the debtors, however, my inquiry does not end there. The debtors have the burden of establishing that they are adequately protecting Grimes' interest in the stock. In considering whether the debtors have met their burden, I note at the outset that they concede that they are making no postpetition payments to Grimes. It is well established in this district that such failure to make post-petition installment payments may be cause for relief from the automatic stay under § 362(d)(1) of the code. *See e.g., In re Wright, Egan & Associates,* 60 B.R. 806 (Bankr.E.D.Pa.1986); *In re Graves,* 59 B.R. 928 (Bankr.E.D.Pa.1986).[7]

The debtors respond, however, with two arguments. First, they contend that Grimes has no secured claim pursuant to 11 U.S.C. § 506 so that no adequate protection in the form of postpetition payments or otherwise is necessary. Alternatively, the debtors argue that the payments to be made to Grimes under the Munoz bankruptcy plan should be considered adequate protection.

The debtors' first argument is premised on its belief that the stock has little or no value.[8] It is the debtors' position, based on 11 U.S.C. § 506, that Grimes' secured claim can be worth no more than the value of the stock securing the claim. *See In re Philadelphia Consumer Discount Co.,* 37 B.R. 946 (E.D.Pa.1984). Adequate protection is necessary only to the extent that Grimes' claim is secured. *Id.* at 950.

I agree. However, to the extent that the debtors seek to use 11 U.S.C. § 506(d) as a

---

7. This is not to say that adequate protection may not take other forms. *See* 11 U.S.C. § 361. *See generally, Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane,* 14 B.R. 542 (E.D.Pa.1981).

8. To the extent that the debtors argue that Grimes failed to present evidence that a secured debt exists at all, I note that the argument is inconsistent with Munoz' own testimony in which he stated that the debt was secured by the stock.

defense to this motion for relief from the stay, it is their burden to establish that they would be likely to prevail on the merits of an action to avoid the security interest pursuant to section 506. *See In re Moore & White; In re Dennison*, 50 B.R. 950 (Bankr.E.D.Pa.1985). *See also, In re Allstar Building Products, Inc.*, 834 F.2d 898, 899 (11th Cir.1987) (en banc); *In re Paolino*, 72 B.R. 555, 558 (Bankr.E.D.Pa. 1987). Here, the evidence is such that I cannot conclude that Grimes' secured claim has no value and that therefore he is not entitled to adequate protection.

The debtors' theory that the stock has no value is belied by the very fact that there is a dispute over the stock in the instant action.[9] If the stock is worth nothing, why is Munoz fighting so hard to keep it? The answer, I believe is fairly obvious. The stock of Jesseco has some value, inter alia, insofar as it provides control of Jesseco. The individual with control of Jesseco's stock can and apparently will thereby derive substantial income by making himself or family members salaried employees of the corporation. Additionally, it appears, based on the evidence, that Jesseco is currently somewhat profitable. Although liabilities still exceed assets and the stock has no book value, the stock may have fair market value to the extent of potential future profitability. I have thus concluded, that the stock of Jesseco is worth substantially more than $10,000.00.

It is on this secured claim that Grimes is entitled to adequate protection. *See generally, United Savings Association of Texas v. Timbers of Inwood Forest Associates; In re Gilece*, 7 B.R. 469, 473 (Bankr.E.D. Pa.1980) (allowing relief from the stay for lack of adequate protection to secured creditor to foreclose on stock). The only pro-

tection of Grimes' interest in the Jesseco stock being offered here are payments of five (5%) percent of Grimes claim as an unsecured creditor in the Munoz bankruptcy plan. Such payments would amount to $10,000.00 over the five year plan period. In light of the fact that Jesseco intends to cancel stock pledged to Grimes and Munoz has made no proposal to offer Grimes substitute security, I can only conclude that the debtor has not carried its burden to establish that Grimes' interest is adequately protected.[10] Thus, in light of my discretion under 11 U.S.C. § 362, *see In re Shariyf*, 68 B.R. 604, 606–607 (E.D.Pa.1986), I will grant Grimes' motion relief from the stay pursuant to 11 U.S.C. § 362(d)(1).[11]

■ I decline, however, to order turnover of the property by the escrow agent to Grimes. I recently held:

> The effect of granting relief from the stay is to allow a creditor to proceed and assert nonbankruptcy created rights (e.g. state law rights) in a nonbankruptcy forum. The creditor may proceed without regard to the bankruptcy filing. Generally, those rights are not enforced by the bankruptcy court; and a motion for relief, which is to be heard and decided expeditiously, is not designed to short circuit nonbankruptcy substantive and procedural requirements. *See In re Adams*, 65 B.R. 646 (Bankr.E.D.Pa.1986). In certain narrow circumstances, policy considerations dictate that the creditor should obtain immediate possession from a bankruptcy court. *In re W.L. Bradley Co., Inc.*, 75 B.R. [505] at 513–514 [Bankr.E.D.Pa.1987] (PACA trust was imposed to provide prompt payment to sellers). Such policy considerations do not exist here. *See In re Air Vermont, Inc.*, (no turnover ordered). *Contra In*

---

**9.** To the extent that the debtors' position is based on the fact that Grimes' has argued from the evidence that the stock is worthless, Grimes' contentions do not obviate the debtors' burden under either Section 506 as a defense to the action or under Section 362 to prove the existence of adequate protection.

**10.** I note that Grimes may have objections to confirmation of the Munoz bankruptcy plan. Given my resolution of the issue here, I need

not decide whether a proposed chapter 11 plan can constitute adequate protection where the secured creditor may be able to defeat plan confirmation by objection.

**11.** It appears from the evidence that Jesseco may retain an interest in some or all of the stock at issue. Any order in this proceeding does not, of course, provide relief from the stay to Grimes in the Jesseco bankruptcy.

*re STN Enterprises, Inc.* [44 B.R. 512 (Bankr.D.Vt.1984)] (turnover ordered).

*In re Moore & White,* at 284–285 (footnotes omitted). As in *Moore & White,* I find no policy considerations here, militating in favor of turnover.[12]

Appropriate orders shall be entered.

---

**12.** The turnover provisions of 11 U.S.C. §.542 refer to the turnover of property to the trustee or debtor-in-possession, *see* 11 U.S.C. § 1107, not from the debtor-in-possession.