**In re James C. KERNS,
Debtor-in-possession.**

**No. TH 89–85–C.
Bankruptcy No. TH 89–16.**

United States District Court,
S.D. Indiana,
Terre Haute Division.

March 8, 1990.

Wilmer E. Goering, II, Eckert Alcorn Goering & Colussi, Madison, Ind., for appellant.

Bruce A. Smith, Sturm Smith & Webster, Vincennes, Ind., for appellee.

## ORDER ON APPEAL FROM DECISION OF BANKRUPTCY COURT

McKINNEY, District Judge.

This cause comes before the District Court on the appeal of the Chapter 12 debtor. The central question presented is whether the Bankruptcy Court erred in lifting the automatic stay early in the bankruptcy to allow the debtor's farm land to be sold, notwithstanding the fact that the secured creditor had an equity cushion and adequate protection in the land. For the reasons set forth below, the Court REVERSES the decision of the Bankruptcy Court and REMANDS this cause for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

James C. Kerns is a family farmer in Knox County, Indiana. He entered into a real estate purchase contract on February 22, 1977, for the 175 acre tract which is the subject of this appeal. He purchased this land from the Blooms, and the real estate is thus commonly known as the Bloom Farm. In April of 1985, Kerns executed an Agreement and Assignment of Real Estate Purchase Contract to Citizens Bank of Vincennes. Pursuant to this Agreement and Assignment, Kerns assigned all of his equity in the 175 acre tract to the Bank as security for certain debts. In July of 1988, the Bank purchased the legal interest in the real estate from the original sellers. Kerns was indebted to the Bank for approximately $126,000 on this land, plus an additional $100,000 pursuant to another loan.

Of the approximately 175 acres of land on the Bloom farm, some 130 are tillable. The land is described as rolling. The farm has several structural improvements, including a 20,000 bushel grain storage bin, a 28' by 90' frame machinery shed, and a 62'

by 68' wood frame barn with metal siding and roofing. Mr. Kerns stored grain in the storage bin. The machinery shed was too small to store his tractor or combine but was used for smaller items, while the barn was used only for seed corn storage and to house a ten-wheeler truck. Kerns did not live on the farm as the house was in poor repair and uninhabitable, but instead lived some two miles away.

Kerns used the Bloom Farm to grow corn, soybeans, and alfalfa. The land became infested with Johnson grass, a weed that reduces crop yields and is difficult to eradicate. The Johnson grass problem reduced Kerns' yield, but he continued to farm the land. Kerns also used the land for cattle grazing in the winter, and the cattle used the barn for shelter. In the summer, Kerns would move the livestock to one of his other farms.

Kerns also farms another 145 acre farm in Knox County that he is purchasing on contract. Additionally, he rents additional farmland, for a total acreage of some 600 acres for all his operations. The farming operations all involve corn, soybeans, alfalfa, and livestock. The other farmland does not suffer from the same infestation of Johnson grass that is present on the Bloom farm. Kerns considers the Bloom Farm necessary to his overall farming operations.

In 1988 Kerns suffered financial difficulties and defaulted on his payments to Citizens Bank. On August 30, 1988, the Bank filed a foreclosure action in the Knox Circuit Court, seeking to foreclose on the Bloom farm.

This bankruptcy case was commenced on January 6, 1989, when Kerns filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code. At the time of filing, Kerns was indebted to the Bank on the Real Estate Purchase Contract and Agreement and Assignment of Real Estate Purchase Contract in the approximate sum of $228,000. Kerns was in default on the Purchase Contract, having not paid the 1988 or 1989 payments. Kerns listed the value of the Bloom farm on his bankruptcy

schedules as $166,800. Upon the filing of the bankruptcy petition, the Bank's state court foreclosure action was automatically stayed under the provisions of 11 U.S.C. § 362(a).

On March 1, 1989, some 54 days after the Chapter 12 filing, Citizens Bank petitioned the Bankruptcy Court for relief from the automatic stay or for the alternative relief of adequate protection. In its motion, the Bank stated that the value of the real estate exceeded the amount of the Bank's claims against the Debtor. Citizens Bank asked the Bankruptcy Court to allow it to pursue its foreclosure action or to allow adequate protection payments to the Bank for the Debtor's use of the Bank's collateral and security.

Thereafter, on March 20, 1989, the Bankruptcy Court held a hearing on these issues, as well as on the valuation of the property. Then, on March 29, 1989, the Bankruptcy Court issued its ruling from which this appeal was taken.

## II. THE DECISION BELOW

In its Order on Motion for Relief From Stay, the Bankruptcy Court ruled that Citizens Bank was entitled to relief from the automatic stay provision of § 362. The Bankruptcy Court found that the Bloom Farm had a value of at least $255,000, and that a buyer was ready, willing, and able to pay for the property. The court further ruled that the farm was not necessary to an effective reorganization of the Debtor's estate.

Although the lower court specifically decided that Citizens Bank had an equity cushion and adequate protection in the subject property such that relief from the stay was not available under § 362(d)(2), the court found that "cause" existed under § 362(d)(1) for allowing relief from the stay. The Bankruptcy Court described the "cause" it found in this case as follows:

The 'other cause' shown under the particular facts presented in this case is that the subject property, which is not necessary to debtor's reorganization, may be sold forthwith for an amount of at least Two Hundred Fifty-five Thousand Dollars ($255,000), less reasonable sale expenses, and possibly Two Hundred Sixty-two Thousand Five Hundred Dollars ($262,500), which amount is sufficient to completely pay off the secured obligations of debtor to Citizens and provide surplus funds to the estate. In addition, the debtor will probably be able to negotiate a contract whereby the subject property may be custom farmed on favorable terms providing further income to the estate.

See Order of March 27, 1989, at 4. The Bankruptcy Court, however, did not cite any case law for its conclusion that these facts constituted "cause" under § 362(d)(1).

Accordingly, the lower court lifted the automatic stay. However, rather than allow the state foreclosure action to proceed as requested by Citizens Bank, the Bankruptcy Court, without explanation, allowed Citizens Bank "to sell the subject property ... for at least ... $262,500...."

## III. SUBSEQUENT PROCEEDINGS

Thereafter, the Debtor sought leave to appeal and asked the Bankruptcy Court to stay its Order pending the appeal. The Bankruptcy Court denied the request to stay the Order. On May 5, 1989, the Debtor then asked the District Court to stay the Bankruptcy Court's Order pending appeal, arguing that the appeal would become moot and Debtor would be deprived of the right to reorganize his family farm if the sale of Bloom farm proceeded. This Court never ruled on the motion.[1]

On May 26, 1989, Citizens Bank reported to the Bankruptcy Court that it had sold the Bloom Farm at a private sale to Ridgeview Homes, Inc., for the sum of $263,000.

---

1. On September 8, 1989, this Court issued a one-page minute Order which purported to overrule a motion of Citizens Bank for relief from stay or for adequate protection. Such an order by the District Court, however, is unfounded as no such motion was presented to the Court by the Bank. It seems likely that the Court actually intended to overrule the Debtor's motion for a stay of the sale pending the appeal. Unfortunately the record does not otherwise speak to this matter.

The Agreement for Sale of Real Estate entered into by Citizens Bank and Ridgeview Homes contained the following provision:

4. The parties hereto acknowledge notice of the fact that subsequent to the entry of the bankruptcy court's Order [granting relief from stay] . . ., [the Debtor] filed a Motion for Stay of said Order Pending Appeal, which was denied by the U.S. Bankruptcy Court . . ., and that [the Debtor] has filed with the U.S. District Court a Motion for Stay of Order Pending Appeal. In the event the sale of the real estate is stayed . . ., the seller shall not be liable to Buyer for damages for any delay occasioned in the sale of the real estate. It is further agreed that if the sale of the aforesaid real estate is ultimately disapproved as a result of the aforesaid appeal, the Seller's sole obligation to the Buyer shall be a complete return of the purchase price for the real estate, together with any interest which may have accrued upon the escrowed purchase price, upon the final order setting aside the bankruptcy court's Order on Motion for Relief from Stay.

*See* Agreement for Sale of Real Estate, ¶ 4.

Citizens Bank subsequently moved to dismiss the appeal, arguing that the automatic stay issue had become moot because of the sale of the real estate. The Debtor responded that the sale was not protected under the Code and that the parties to the sale of the Bloom Farm had expressly provided for return of the purchase price upon culmination of the appeal in the Debtor's favor.

The parties then briefed the merits of the appeal. The Debtor asserts that the Bankruptcy Court erred in finding cause under § 362(d)(1) for modifying the automatic stay, and that the private sale ordered by the Bankruptcy Court was contrary to law

in that the foreclosure action should have simply been allowed to proceed. Before reaching these issues, it is necessary to set forth the appropriate standards of review.

## IV. STANDARDS OF REVIEW

■ In reviewing a decision of the bankruptcy court, this District Court acts as an appellate tribunal and is governed by traditional standards of appellate review. Specifically, the Court "is constrained to accept the bankruptcy court's findings of facts unless they are clearly erroneous." *In Re Excalibur Auto Corp.*, 859 F.2d 454, 457, n. 3 (7th Cir.1988); *In Re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988). "A finding is clearly erroneous if upon review of the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Graham v. Lennington*, 74 B.R. 963, 965 (S.D.Ind.1987). "Generally, as long as the bankruptcy judge's inferences are reasonable and supported by the evidence, they will not be disturbed." *Id.*

■ Conclusions of law made by the bankruptcy court, however, must be reviewed *de novo*. *Excalibur Auto Corp.*, 859 F.2d at 457, n. 3; *Longardner & Associates, Inc.*, 855 F.2d at 459; *In Re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989). And, where the challenged finding is a mixture of law and fact, the clearly erroneous standard is also inapplicable. *Graham*, 74 B.R. at 965.

■ In this case, the parties agree that the Bankruptcy Court's order lifting the automatic stay is reviewed for an abuse of discretion. *In Re Holtkamp*, 669 F.2d 505, 507 (7th Cir.1982); *In Re MacDonald*, 755 F.2d 715, 716 (9th Cir.1985); *In Re Towner Petroleum Co.*, 48 B.R. 182, 186 (Bankr.W.D.Okla.1985).[2] With these stan-

2. The Court notes that it has not located any authority that fully addresses the standard of review on this issue. Most of the cases discussing the matter simply state that the decision to lift the stay is committed to the discretion of the Bankruptcy Court and cite another case that has previously made the same statement. For instance, in *Holtkamp*, 669 F.2d at 507, the Seventh Circuit wrote, "Since the statute commits

the decision of whether to lift the stay to the discretion of the bankruptcy judge, his decision may be overturned only upon a showing of abuse of discretion." The *Holtkamp* court cited the case of *In Re Frigitemp Corp.*, 8 B.R. 284 (S.D.N.Y.1981), for this proposition. An examination of the *Frigitemp* decision, however, reveals that the district court there merely recited a similar statement without explanation and cit-

dards and background at hand, the Court will address the issues raised.

## V. DISCUSSION

### A. *Mootness:*

■ The first issue to be addressed is whether this appeal is moot. Citizens Bank asserts that this case is moot because this "reviewing Court is incapable of rendering effective relief or restoring the parties to their original position," and because, in asking for a stay of the lower court's order, the debtor argued that the appeal would be moot if no stay were issued. As discussed below, however, while the Bank's general statement of law is correct, in this case this reviewing Court is capable of restoring the parties to their original positions such that the appeal is not moot. Moreover, the fact that the debtor averred that the appeal would become moot is not dispositive of this Court's jurisdiction, particularly where the debtor's statement was made prior to the private sale of the property and where that sale specifically contemplated reversal of the Bankruptcy Court's order.

■ It is generally true that the failure of an appellant to obtain a stay of the trial court's order allowing the sale of property renders an appeal from that order moot. *See, e.g., Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260 (7th Cir.1986); *In Re Vetter Corp.,* 724 F.2d 52 (7th Cir.1983); *In Re Kahihikolo,* 807 F.2d 1540 (11th Cir.1987). This is so, not because the reviewing courts cannot require the parties to return to the original status quo, but because of the policy of finalizing judgments. As the Seventh Circuit has written, "In refusing to reverse the sale of property to a good faith purchaser, the courts ... further[ ] 'the policy of not only affording finality to the judgment ... but particularly to give finality to those orders and judgments upon which third parties rely.' "

---

ed to early cases to support the proposition. *See Frigitemp,* 8 B.R. at 289.

A review of the actual statutory language suggests that the matter may not be one of total discretion. Specifically, § 362(d) provides that on the request of a party in interest and after notice and hearing, "the court *shall* grant relief from the stay, such as by terminating, annulling, modifying, or conditioning such stay— (1) for cause...." § 362(d)(1) (emphasis added).

It would seem, then, that where "cause" is found to exist, Congress has directed the Bankruptcy Court to lift the stay. Conversely, where "cause" does not exist, the Bankruptcy Court seems to lack any power to lift the stay. There is nothing in the statute (such as the word "may") suggesting that there is discretion in the decision of whether to grant relief. This is in contrast with § 1121(d) of the Code where Congress provided that the court "may for cause increase the 120 day period [to file a Chapter 11 plan]." *See In Re Sharon Steel Corp.,* 78 B.R. 762, 763 (Bankr.W.D.Pa.1987) (court notes that the use of the word "may" instead of "shall" in the Code shows discretionary nature of decision). Thus, where cause is found to exist, the courts have no discretion to deny relief.

The question of whether "cause" has been shown also does not appear to be one of unfettered discretion. Rather, this would seem to be a mixed question of law and fact to be resolved based on the evidence produced by the parties, and guided by the exercise of the court's discretion. The question of cause does not seem to be committed to the trial court's exercise of unlimited discretionary powers.

What does seem to be wholly discretionary under § 362(d), though, is how the Bankruptcy Court fashions its grant of relief where it is found, as a matter of proof, that cause exists. This discretionary power is suggested by the language of § 362(d) wherein Congress wrote that "the court shall grant relief from the stay provided under subsection (a) of this section, *such as by terminating, annulling, modifying, or conditioning such stay....*" § 362(d) (emphasis added). This certainly makes sense, for the Bankruptcy Court, having found cause to be present, might deem it appropriate to condition the grant of relief upon the happening of certain events. In this case, for instance, the Bankruptcy Court fashioned the relief such that the sale could only take place within a limited amount of time and for a specified minimum amount. Such situations certainly are the type usually committed to trial court's discretion.

Thus, a reading of the statute strongly suggests that: (1) the question of whether cause exists is a separate inquiry dependent upon the facts as adduced at the hearing and guided by the trial court's discretion; (2) that where cause does exist, relief must be granted; (3) and that, in fashioning the grant of relief, the trial court has full discretion. Thus, the general statements made by the courts that decisions made under § 362(d) are discretionary appear to be only partially correct. Accordingly, this Court will apply this three-pronged standard set forth above. The Court does not deem it to be a modification of prior law or contrary to the standard the parties put forth, but rather a mere clarification.

*Meyer,* 781 F.2d at 1264 (*quoting Vetter,* 724 F.2d at 55).

■ This rule, however, is inapplicable in this case for three reasons. First, the debtor appropriately sought a stay of the order from both the Bankruptcy Court and this District Court. While the Bankruptcy Court denied the stay, this Court, through inadvertence, failed to rule on the motion.

It is apparent from today's decision on the merits that the Court should have granted the stay, and it seems unduly harsh to the debtor and contrary to law to say that this Court has deprived itself of jurisdiction and made futile the debtor's appeal because of its failure to rule on the debtor's motion. Indeed, there is authority for the proposition that this mootness rule should not be applied where the appellant took the necessary steps to obtain a stay. *See International Brotherhood of Boilermakers v. Kelly,* 815 F.2d 912, 916 n. 5 (3d Cir.1987); *In Re Kulp Foundry, Inc.,* 691 F.2d 1125, 1129 (3d Cir.1982) (recognizing an exception to the rule where the appellant has expeditiously taken all steps necessary to preserve the status quo before the dispute becomes moot).[3]

Although this exception to the mootness rule has historically been applied to cases in which important liberty interests were at stake, *Kulp Foundry,* 691 F.2d at 1129, it seems equally applicable here where the appellant has the important equitable right of redemption because this right "is property and is protected by due process." *Vanjani v. Federal Land Bank of Louisville,* 451 N.E.2d 667, 669–70 (Ind.App.1983). Thus, because Mr. Kerns attempted to obtain a stay of the order and because he has a protected property interest in the land, this Court determines that the mootness rule does not apply.

■ The second reason this appeal is not moot is that the purchaser and seller of the property specifically provided for the possibility that the Bankruptcy Court's order might be reversed. In their purchase agreement the Bank and Ridgeview homes agreed as follows:

> It is further agreed that if the sale of the aforesaid real estate is ultimately disapproved as a result of the aforesaid appeal, the Seller's sole obligation to the Buyer shall be a complete return of the purchase price for the real estate, together with any interest which may have accrued upon the escrowed purchase price, upon the final order setting aside the bankruptcy court's Order on Motion for Relief from Stay.

Thus, the parties themselves contemplated the lack of finality, and went so far as to agree that they would return to their original positions if the Bankruptcy Court's order were reversed. As the Ninth Circuit has held, where the third-party purchaser has expressly provided for the possibility of the sale being nullified due to an appeal, the mootness problem is not present because the reviewing court can grant effective relief. *In Re Cada Investments, Inc.,* 664 F.2d 1158, 1161 (9th Cir.1981).

■ Third and finally, the private sale of the Bloom Farm ordered by the Bankruptcy Court is contrary to state law. In moving for relief from the stay, Citizens Bank asked the lower court for permission to proceed with its state court foreclosure action. The Bankruptcy Court, however, ordered a private sale instead.

When the automatic stay was lifted, the debtor's rights in the property were governed once again by Indiana state law. *Kahihikolo,* 807 F.2d at 1542 (rights are governed by state law after stay is lifted); *In Re Winslow,* 39 B.R. 869, 871 (Bankr.N. D.Ga.1984) (same). If Indiana law gave the debtor redemption rights in the property, then those rights had to be respected

---

**3.** The Court notes that it is duty bound to "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [it] can." *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987). The Seventh Circuit has expressed concern when the district courts it governs fail to adopt authoritative opinions of the other courts of appeals. "Although decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight." *Richards v. Local 134, International Brotherhood of Electrical Workers,* 790 F.2d 633, 636 (7th Cir.1986).

after the stay was lifted. As one court has noted,

> If [the debtor] has the right under [state law] to set aside a foreclosure sale after the sale has taken place, after deeds have been recorded, and after the property has been sold to a third party, then she has the right in bankruptcy to do the same and that right is property of the estate. If [the debtor] does have such a right under [state] law, we are not powerless to enforce it, and we may grant [the debtor] relief to the same extent [state] courts would in similar circumstances.

*In Re Worcester,* 811 F.2d 1224, 1228 (9th Cir.1987). *Cf., Citibank, N.A. v. Data Lease Financial Corp.,* 645 F.2d 333 (5th Cir.1981) (in diversity actions, if state law grants the former owner the right to set aside an invalid judicial sale, then that right must enforced despite the fact that the sale has already occurred).[4]

In this case, the debtor did have valuable redemption rights in the land under Indiana law. *See Ind.Code* § 34–1–53–8 (1983); *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973); *Oles v. Plummer,* 444 N.E.2d 879 (Ind.App.1983). The equitable right of redemption is property and is protected by due process. *Vanjani v. Federal Land Bank of Louisville,* 451 N.E.2d 667, 669–70 (Ind.App.1983). Execution sales are governed by statute and must conform to specific procedures. *Ind.Code* §§ 32–8–16–1, 1.3 (1989). Thus, an execution sale may be set aside under Indiana law in the discretion of the trial court upon proof that the sale was contrary to law. *Smith v. Federal Land Bank of Louisville,* 472 N.E.2d 1298, 1302 (Ind.App.1985).

The Bankruptcy Court, rather than allowing the foreclosure action to proceed to a sale as required by Indiana statute, ordered a private sale without explanation, and no authority has been argued for the proposition that the debtor's assignment of equity to the Bank as security somehow excused the obligation to follow Indiana

foreclosure law. To the contrary, the law is that an assignment of rights in a land contract "amount[s] to nothing more than a mortgage, and it can be enforced only through foreclosure proceedings." *Petz v. Estate of Petz,* 467 N.E.2d 780, 782 (Ind. App.1984). Indeed, the Bank itself asked the lower court for permission to continue with its foreclosure, *not* to conduct a private sale. In short, the lower court was not empowered to bypass the foreclosure action and allow a private sale.

Accordingly, because of these factors, when considered either independently or cummulatively, this Court determines that it has jurisdiction to review the merits of the appeal. The issues raised have not been mooted, and the Court will proceed to determine whether the Bankruptcy Court erred in lifting the stay.

### B. *Did cause exist for modifying the automatic stay?*

#### 1. Background:

Section 362(a) of the Bankruptcy Code provides that upon the filing of a bankruptcy petition, all proceedings or efforts to recover a pre-petition claim are automatically stayed. 11 U.S.C. § 362(a). "Bankruptcy courts impose automatic stays to preserve the remainder of the debtor's estate as well as to provide an equitable ... procedure for the creditors." *In Re Boomgarden,* 780 F.2d 657, 663 (7th Cir.1985). As one court has noted,

> The automatic stay ... is designed to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.

---

**4.** It should be noted at this point that because the order below was in no way authorized under § 363(b) or (c), the safe harbor of § 363(m) for good faith purchasers is not invoked in this

case such that the purchaser would not be affected by the reversal of the lower court's order. *Compare In Re Sax,* 796 F.2d 994 (7th Cir.1986) (where § 363(m) was invoked).

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). An automatic stay restraining actions against property remains in effect until such property is no longer in the estate. § 362(c)(1).

The automatic stay, however, is not without flexibility. Section 362(d) of the Code provides two separate grounds for obtaining relief from the automatic stay. The statute reads as follows:

> On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Thus, under § 362(d)(1), relief is available if "cause" is shown. The Code specifically states that the lack of adequate protection is one type of sufficient cause. Under § 362(d)(2), relief from the stay is only available if the debtor does not have equity in the property and does not need the property for an effective reorganization. Be-

cause the two subsections are disjunctive, relief has historically been based on either § 362(d)(1) or (d)(2).[5]

In this case, the Bankruptcy Court specifically found that relief was not available under § 362(d)(2) because "the debtor does have equity in the subject property." Moreover, the lower court found that Citizens Bank is adequately protected by its equity cushion and is therefore not entitled to relief under the "adequate protection" aspect of § 362(d)(1). Instead, the Bankruptcy Court granted relief from the stay under the "for cause" provision of § 362(d)(1). Thus, the narrow question presented here is whether the lower court erred in finding cause for terminating the stay.

2. Cause cannot be based on the mere fact that the subject property can be sold to pay off the secured creditor's claims and provide surplus to the estate where there is an equity cushion and adequate protection, where the debtor has been in Chapter 12 less than three months, and where the property is an integral part of the farming operations:

In order to address this issue, it is first necessary to understand the framework within which the Bankruptcy Court was required to make its decision. This invokes two separate inquiries: the burden of proof below, and the standards for granting relief "for cause" under § 362(d)(1).

**5.** It would seem that where the stay prohibits an "act against property" (i.e., foreclosure), only subdivision (d)(2) would be available to the interested party. This is because, while subdivision (d)(1) speaks generally to lifting stays for cause, subdivision (d)(2) specifically begins with the language "with respect to a stay of an act against property...." Because this subdivision speaks specifically to acts against property, it would seem that it is the provision that must be invoked to proceed with foreclosures and the like.

The parties, however, have not raised this issue, and the Court has not located any authority making this distinction. Many courts have analyzed motions for relief from stays regarding property under subdivision (d)(1)'s general provision. None have noted that (d)(2) seems to be the appropriate standard provided by Congress for allowing actions to proceed against property. Nor have any courts noted that the legislative history discussing what constitutes "cause," which is (d)(1) language, involves examples of actions that do not involve property, thus implying that (d)(1) was not intended to govern in the property setting. *See, e.g.,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6300.

Thus, if the issue were reached today, this Court could well decide that because the stay in this case prohibited an act against property and because the standards of § 362(d)(2) were not met, the lower court was not free to consider subdivision (d)(1)'s "for cause" provision. However, because the lower court's decision was erroneous even under subdivision (d)(1), this Court need not decide whether (d)(1) can even be applied in property settings.

### a. *burden of proof*

Under § 362(g), the debtor, as the party opposing the motion for relief from the stay, had the ultimate burden of proof to show that cause did not exist for vacating the stay.[6] *In Re Domestic Fuel Corp.,* 70 B.R. 455, 462–63 (Bankr.S.D.N.Y.1987). However, this does not mean that the non-movant debtor had the burden of initial production. To the contrary, it is well settled that the moving creditor here had the initial burden to come forward with evidence showing that cause existed. *In Re Unioil,* 54 B.R. 192, 194 (Bankr.D.Colo. 1985); *In Re Compass Van & Storage Corp.,* 61 B.R. 230, 234 (Bankr.E.D.N.Y. 1986).

As one court has noted,

The Bankruptcy Code expressly provides that the party opposing relief from the automatic stay, i.e., the debtor herein, has the burden of proof on all issues except on the issue of the debtor's equity in property. 11 U.S.C. § 362(g). The burden of production, i.e., raising a genuine issue of cause, however is upon the party requesting relief. This proposition is the logical result of the premise that the debtor should not have to demonstrate the nonexistence of every conceivable cause or answer a naked assertion of the existence of a particular cause.

*In Re Setzer,* 47 B.R. 340, 345 (Bankr.E.D. N.Y.1985) (citation omitted). *Accord,* 2 *Collier on Bankruptcy* ¶ 362.10 (1988) (the Code requires a showing of cause by the movant under § 362(d)(1) and then in § 362(g) places the burden of proof or "risk of non-persuasion" on the party opposing relief); *In Re Raymond,* 99 B.R. 819, 820–21 (Bankr.S.D.Ohio 1989) (party seeking relief under § 361(d) must make prima facie case of cause); *In Re Morysville Body Works, Inc.,* 86 B.R. 51, 55 (Bankr.E.D.Pa. 1988) (same).

Thus, Citizens Bank had to come forward with evidence raising an issue of cause, and the debtor had to ultimately prove that there was not such cause.

### b. *standards for cause under § 362(d)(1)*

The question of what constitutes cause under § 362(d)(1) is not an easy one, for other than stating that the lack of adequate protection is one example of sufficient grounds for removing the stay, Congress did not define cause or otherwise provide further explanatory examples. Thus, this Court must follow the rules of statutory construction to determine the meaning of "for cause" as it is used in § 362(d)(1) of the Code.

The starting place in construing any statute, of course, is the plain language itself. *United States v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Mallard v. U.S. Dist. Court for the Southern Dist. of Iowa,* —— U.S. ——, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989). Words in a statute are to be given their plain and ordinary meaning. *Jones v. Hanley Dawson Cadillac Co.,* 848 F.2d 803, 807 (7th Cir.1988). "As a general rule, when that language is plain, there is no reason to examine other indicia of legislative intent." *Nupulse Inc. v. Schlueter Co.,* 853 F.2d 545, 548 (7th Cir.1988); *see also Meredith v. Bowen,* 833 F.2d 650, 654 (7th Cir.1987) (same). But the meaning of words "depends on their context." *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 109 S.Ct. 278, 281, 102 L.Ed.2d 186 (1988). "[P]lain meaning, like beauty, is sometimes in the eye of the beholder." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 737, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985).

"[W]here Congress has used a common law term or legal term with established meaning, the courts should apply that term of art's accepted definition absent clear indication to the contrary. *United States v. Bailey,* 734 F.2d 296, 303 (7th

---

**6.** This Code section provides, "In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

Cir.1984). When a statute is ambiguous or when a literal construction would lead to absurd results or thwart the obvious purposes of the statute, legislative history or other tools of construction may be helpful. *Smith v. Bowen*, 815 F.2d 1152, 1155 (7th Cir.1987). Ambiguity, however, is not necessarily present just because Congress has chosen to use broad, general language. *Diamond v. Chakrabarty*, 447 U.S. 303, 315, 100 S.Ct. 2204, 2211, 65 L.Ed.2d 144 (1980).

■ In this instance, it is a close call whether § 362(d) is ambiguous in its use of "for cause" as a standard. On the one hand, this term of art has specific connotations, at least in the labor and employment field. *See, e.g., Black's Law Dictionary* 580 (5th ed. 1979) (with respect to removal from office, "for cause" means for reasons that law and public policy recognize as sufficient, and such cause is "legal cause" and not merely the arbitrary or capricious use of discretion). And, in this bankruptcy context, Congress has indicated under § 362(d) that the lack of adequate protection or, alternatively, the lack of an equity cushion combined with the property not being necessary for reorganization constitute sufficient cause to lift the automatic stay.

On the other hand, however, Congress has not provided any other guidelines for determining when the motion is for cause, and it would thwart the purpose of the automatic stay of § 362(a) to construe the term "for cause" to include "any cause." Yet, while Congress certainly could have drafted such a statute, it makes little sense to conclude that Congress intended the powerful and important automatic stay of § 362(a) to be subject to dissolution at the whim of an interested party.

Thus, while there appear to be some guidelines for interpreting this language within the very Code section itself, this Court finds that the statute is, in fact, ambiguous. As one court has noted, "[T]here is no clear definition of what constitutes 'cause'" under § 362(d)(1). *In Re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986).

Accordingly, this Court will invoke other statutory tools of construction, including legislative history, to aid in the interpretation and application of the statute. *Cf., In Re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (Seventh Circuit relies on legislative history in interpreting § 362(d)); *In Re Towner Petroleum Co.*, 48 B.R. 182, 185 (Bankr.W.D.Okla.1985) (court implicitly finds § 362(d)(1) ambiguous by looking to legislative history); *In Re Compass Van & Storage Corp.*, 61 B.R. 230, 234 (Bankr.E. D.N.Y.1986) (same); 2 D. Cowans, *Bankruptcy Law and Practice* § 11.7 (1986) (noting that legislative history suggests other possible causes).

1. Legislative History

One of the tools available here to aid in interpreting § 362(d)(1) is the legislative history. The House Report provides the following discussion of what might constitute cause under § 362(d):

> Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case [and] should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6300. *See also* S.Rep. No. 95–689, 95th Cong., 1st Sess. 52 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838 (noting that proceedings that bear no relationship to the purpose of the automatic stay are properly allowed to continue under § 362(d)(1)).

Thus, a review of the legislative history reveals that Congress did not intend the automatic stay to remain in force when the proceedings stayed have no relationship to the purpose of the automatic stay. The question, then, is whether the foreclosure action brought by Citizens Bank bears a significant relationship to the purpose of the automatic stay.

The automatic stay is one of the "fundamental protections provided by the bankruptcy laws." *See* S.Rep. No. 95–689, 95th Cong., 1st Sess. 52 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840. *Accord,* Kennedy, *Automatic Stays under the New Bankruptcy Law* 12 U.Mich.L.J.Ref. 3 (1978) (labeling the automatic stay as "indispensable to bankruptcy administration"). Its main purpose is to "give[ ] the debtor a breathing spell from his creditors." S.Rep. No. 95–689, 1978 U.S.Code Cong. & Admin.News 5840.

In this light, it cannot be disputed that this type of foreclosure action against farm property bears a significant relationship to the purpose of the automatic stay. The stay is clearly intended to prevent foreclosures from proceeding while the debtor legitimately attempts to reorganize. Thus, the legislative history strongly suggests that, because the automatic stay is intended to give debtors a breathing spell from foreclosure actions, the grounds presented by Citizens Bank in this case would not constitute "cause" to lift the stay.

### 2. The Effect of Chapter 12

A look at the operation of the Bankruptcy Code as a whole and the purpose of Chapter 12 further supports this conclusion. Chapter 12 "was enacted as a vehicle to salvage the finances of farmers." J. Anderson, J. Morris, *Chapter 12 Farm Reorganizations* § 1.22 (1989) [*hereinafter* "*Chapter 12 Reorganizations*"]. Congress created Chapter 12 in 1986 in order to "give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." *Id.* The legislation is part of an emergency chapter of the Code meant to "provide relief for family farmers during a national farm crisis." 3

W. Norton, *Bankruptcy Law and Practice* § 80.01 (1987).

Chapter 12 is similar to other reorganization provisions of the Code, but provides the family farmer with some special protections. For instance, unlike under Chapter 11, the Chapter 12 family farmer has the exclusive right to file a plan of reorganization, the creditors have no right to vote on the plan, and the plan need not be submitted until 90 days after the case has commenced. *Chapter 12 Reorganizations* § 1.22. "Essentially, the plan must be feasible and in the best interests of the creditors, a test which mandates that creditors receive more under the plan than they would in a liquidation." *Id.*

Another difference is that under Chapter 13, payments to creditors must start within 30 days after the plan is filed, while under Chapter 12 there is no such requirement. 3 W. Norton, *Bankruptcy Law and Practice* § 80.14. There is also no statutory time limit on repayment of secured claims under Chapter 12. *Id.*

Thus, when looking at the purpose of Chapter 12 and the automatic stay provisions, it becomes evident that Congress did not intend creditors to be able to proceed with their foreclosure actions on family farms in cases such as this where the 90 days for proposing the reorganization plan had not yet passed, where the creditor had an equity cushion and adequate protection in the land, and where there was no evidence of bad faith or any other proffered reason for vacating the stay. To allow a foreclosure to proceed in such a case would effectively repeal the substantial protections of Chapter 12.

### 3. The Meaning of "For Cause"

In using the language "for cause," Congress unfortunately, though perhaps intentionally, did not provide much help on what scenarios might be sufficient under this general standard. The only guidance it did give is by noting that cause can include the lack of adequate protection. This at least gives some indication of what Congress had in mind, but does not answer all questions.

As noted previously, however, the words "for cause" constitute a term of art that is used in many areas of the law. The term seems to be most prevalent in the employment area where many statutes and contracts provide that an employee can only be terminated "for cause." Although the use of this term in the employment context is necessarily governed by its understandings in that arena, its general connotations are certainly worth considering in this bankruptcy setting.

One source defines "for cause" as follows:

> With respect to removal from office, 'for cause' means for reasons which law and public policy recognize as sufficient warrant for removal and such cause is 'legal cause' and not merely a cause which the appointing power in the exercise of discretion may deem sufficient. They do not mean removal by arbitrary or capricious action but there must be some cause affecting and concerning ability and fitness of official to perform duty imposed on him.

*Black's Law Dictionary* 580 (5th ed. 1979). Case law from the employment field provides similar definitions. *See, e.g., Day v. United Automobile, Aerospace, & Agricultural Implement Workers*, 466 F.2d 83, 92 (6th Cir.1972) ("A discharge for cause means a discharge for good cause"); *McCallister v. Priest*, 422 S.W.2d 650, 657 (Mo.1968) ("for cause" means legal cause and it must be one which specifically relates to and affects the administration of office and must be restricted to something of a substantial nature directly affecting rights and interests of public).

■ Authority such as this tends to establish the general proposition that the term "for cause" means more than just "any cause." Rather, this language is usually invoked to impose some substantive standard on the decision maker. Moreover, while the standard is broad, it does not allow the unfettered use of complete discretion.

■ In extrapolating these general notions to the bankruptcy context, it is seen that the lower court's decision to vacate the stay for the singular reason that a willing buyer existed would not be "for cause." To deprive the Chapter 12 family farmer of the opportunity to include the property in his plan of reorganization solely because a creditor has located a prospective buyer several months after the filing of bankruptcy is not a reason backed by public policy. Thus, the interpretation of this term of art given by another field of law supports the conclusion that the lower court erred in vacating the stay.

4. Case Law

Finally, a review of the case law under § 362(d)(1) supports the conclusion that relief from the stay was not available under the facts of this case. Although there are a number of reported decisions in which mortgage foreclosures have been allowed to proceed,[7] none of those cases involved the scenario presented here where there was equity and adequate protection in the debtor's property, where there was no evidence of bad faith on the debtor's behalf, and where the motion for relief from the stay was filed less than two months after the Chapter 12 petition was filed.

To the contrary, the cases in which stays against foreclosures have been lifted have involved situations such as a debtor's "patent ineligibility to seek relief under Chapter 11,"[8] the failure to pay mortgage payments for more than three years after filing bankruptcy,[9] the failure to provide adequate protection and failure to make payments for over 18 months since the filing of bankruptcy,[10] and the failure to make

7. *See, e.g., In Re Stulley*, 108 B.R. 174 (Bankr.S.D.Ohio 1989); *In Re Frascatore*, 98 B.R. 710 (Bankr.E.D.Pa.1989); *In Re Cooper*, 98 B.R. 294 (Bankr.W.D.Mich.1989); *In Re Sierra*, 73 B.R. 322 (Bankr.D.P.R.1987); *In Re Graves*, 59 B.R. 928 (Bankr.E.D.Pa.1986); *In Re Augustus Court Associates*, 46 B.R. 619 (Bankr.E.D.Pa.1985).

8. *Stulley*, 108 B.R. at 178.

9. *Frascatore*, 98 B.R. at 721.

10. *Sierra*, 73 B.R. at 322–23.

payments for nine months after the filing of bankruptcy.[11] As one court noted in discussing some of the cases that have allowed relief under § 362(d)(1) for failure to make payments, "These cases are distinguished by the feature that they lack: a discussion of debtor's equity." *In Re Morysville Body Works, Inc.*, 86 B.R. 51, 57 (Bankr.E.D.Pa.1988). "As such, they can be categorized by the statement that *when no equity cushion exists*, a lack of monthly payments may be grounds for granting § 362 relief." *Id.* (emphasis added).

Indeed, there is persuasive authority standing for the proposition that the mere failure to make payments, without more, is insufficient grounds to remove the stay. *See, e.g., In Re Raymond*, 99 B.R. 819 (Bankr.S.D.Ohio 1989) (sporadic payments over four months following confirmation of the plan did not amount to "cause" as a matter of law); *In Re Lipply*, 56 B.R. 524 (Bankr.N.D.Ind.1986) (failure to make payments during bankruptcy was not, without more, cause warranting lifting of stay); *In Re Madison Hotel Associates*, 18 B.R. 218 (Bankr.W.D.Wis.1982) ("relief from the automatic stay for 'cause' is not, nor was it intended by the drafters of the Bankruptcy Code, to encompass mere delay in the assertion of rights where that delay in not accompanied by demonstrable economic loss").

As Judge Rodibaugh of the Northern District of Indiana has explained, the common theme among § 362(d) relief cases is abuse. *In Re Lipply*, 56 B.R. at 527. "Creditors have been granted relief where malfeasance by the debtor(s) has constituted an abuse of the bankruptcy process." *Id.* As Judge Rodibaugh noted:

> The term 'cause' as used in § 362(d)(1) requires more than simply nonpayment. The cause must be some form of malfeasance on the part of the debtor. The failure to make contractual payments during the bankruptcy case is not, without more, cause, where the creditor is

truly given the indubitable equivalent of his bargain.

*Id.* at 528.

While this Court need not go so far as to say that malfeasance by the debtor must be shown,[12] this Court does agree that mere nonpayment for a short period of time during bankruptcy is not sufficient cause, particularly where there is equity and adequate protection and where the time for filing the plan of reorganization has not even passed. Moreover, in the Chapter 12 setting where one would expect the family farmer to have only seasonal income, it cannot be presumed, without explicit statutory language to the contrary, that Congress wanted creditors to be able to continue their foreclosures shortly after the filing of Chapter 12.

The reason debtors file bankruptcy is for protection from creditors and an opportunity to work out their problems. Congress enacted the bankruptcy laws under the belief that a structured system would be preferable to an uncontrolled scramble for the debtor's remaining assets for debtors, creditors, and interstate commerce alike. The very essence of bankruptcy is that the debtors are in arrears, and Congress obviously recognized this in enacting the Code. It would be illogical if not absurd to offer the defaulting family farmer the formidable protections of Chapter 12, including the automatic stay, only to allow creditors to then rush into Bankruptcy Court and obtain relief from the stay where the 90 days for proposing a plan of reorganization has not even passed.

#### c. *Conclusion:*

Thus, this Court holds that the Bankruptcy Court abused its discretion in lifting the automatic stay. The evidence below unequivocally showed that Citizens Bank had an equity cushion in the land and was adequately protected. There was no evidence of any bad faith or malfeasance on the debtor's behalf, and the subject property was being put to good use by the

---

**11.** *Augustus Court*, 46 B.R. at 620.

**12.** Indeed, as the legislative history discussed previously illustrates, if the action being stayed has no relevance to the bankruptcy, § 362(d)(1) is properly invoked, even though no malfeasance on the debtor's part has been shown.

debtor and was integral to his farming operations.[13]

Mr. Kerns, a family farmer under the Code, suffered from the type of crisis for which Congress enacted Chapter 12. He fell behind in his mortgage payments, faced the prospect of losing his farm, and filed for Chapter 12 protection on January 6, 1989. Less than two months later on March 1, 1989, some 35 days prior to the time that Kerns was required to submit his plan of reorganization, Citizens Bank asked the Bankruptcy Court for permission to proceed with its state court foreclosure action. On March 29, 1989, still before the time that Kerns' plan of reorganization was due and less than three months since the filing of his Chapter 12 petition, the Bankruptcy Court allowed the Bank to sell the land, in essence, because a willing buyer was present, and notwithstanding the fact that the Bank had an equity cushion and was adequately protected.

This reviewing court holds as a matter of law that the automatic stay of § 362(a) cannot be cast aside so lightly in such a case. The Bank failed to meet its burden of production to show that cause existed to vacate the stay, and even if it did, Mr. Kerns presented unrefuted evidence establishing that cause was not present. Accordingly, the decision of the Bankruptcy Court vacating the stay must be reversed.

### C. *Redemption rights:*

Additionally, the Court notes again that the private sale was contrary to state law and must be reversed on that basis as well. The debtor had valuable redemption rights in the property under Indiana law, and the land was to be sold at public auction if the foreclosure was allowed to proceed. Both of these requirements were effectively nullified by the private sale. The order lifting the stay must be reversed for this reason as well.

### VI.  CONCLUSION

Accordingly, this Court has jurisdiction to review the merits of the appeal. Because the lifting of the stay was contrary to law and an abuse of discretion, the decision below is reversed. This cause is remanded to the Bankruptcy Court for fur-

---

**13.** The Bankruptcy Court ruled that the Bloom Farm was not necessary to the reorganization, but did not explain how it reached this conclusion. In order to determine whether property is "necessary for effective reorganization" under § 362(d)(2)(B), the Bankruptcy Court must determine whether the subject property is necessary to effect a reorganization and whether there is a reasonable possibility of a successful reorganization within a reasonable time. *In Re Gilece,* 7 B.R. 469, 472 (Bankr.E.D.Pa.1980); *In Re Pacific Tuna Corp.,* 48 B.R. 74, 78 (Bankr.W. D.Tex.1985). Where a reorganization is in its infancy, the standard must necessarily be relaxed somewhat. *In Re Planned Systems, Inc.,* 78 B.R. 852, 866 (Bankr.S.D.Ohio 1987). This is so because "courts should not scuttle property vital to a debtor's reorganization until the debtor has had a full opportunity to utilize the rehabilitative tools afforded by the Bankruptcy Code." *Id.*

In this case, the mere fact that the debtor had other land which he farmed does not make the subject property somehow unnecessary to reorganization. Nor does the hearsay evidence that the prospective purchaser of the land might rent the farm to the debtor make the property unnecessary to Chapter 12 reorganization. All the evidence adduced below showed that Kerns continued to grow crops on the land despite the Johnson grass problem, that his livestock grazed there in the winter, and that he used the farm's improvements to store machinery and up to 20,000 bushels of grain. These unrefuted facts show that the farm is necessary to an effective reorganization. *Accord In Re Deeter,* 53 B.R. 623, 625 (Bankr.N.D.Ind.1985) (farm property was necessary to reorganization because it was used by the farmers in their operations); *In Re Dahlquist,* 34 B.R. 476, 483 (Bankr.D.S.D.1983) (farm was necessary to reorganization where debtors needed the livestock, crops, and equipment to reorganize). It is thus unclear how the lower court could determine, after less than three months had passed since the filing of the bankruptcy, that the farm was not necessary to reorganization.

The whole purpose of Chapter 12 is to allow the farmer an opportunity to keep his land and restructure his debts. The conclusion in this case that the Bloom Farm was not necessary to the reorganization is unsupported by the record and thwarts this purpose. Thus, even though not essential to today's decision, this Court holds that the lower court's finding on this matter was contrary to law and/or clearly erroneous, whatever the appropriate standard of review might be on this matter. (This Court would view the question of the necessity of the property to reorganization as a mixed question of law and fact not subject to the clearly erroneous standard).

ther proceedings consistent with this opinion. The stay shall be reinstated, and the debtor shall be returned to the ownership position he had at the time the stay was lifted. Costs are taxed to the appellee.

IT IS SO ORDERED.